Commonwealth *v.* Simms, Appellant.

Argued November 12, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*Samuel J. Reich,* with him *Cooper, Schwartz, Diamond & Reich,* for appellant.

*Peter Foster,* Assistant District Attorney, with him *Robert L. Eberhardt,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 21, 1974:

On the evening of October 21, 1971, the appellant, James Simms, was involved in an incident in a bar in Pittsburgh which culminated in appellant's shooting Francis Quinn in the knee. Following a trial by jury, the appellant was found guilty on all four counts with which he was charged: assault with intent to maim, aggravated assault and battery, pointing and discharging a firearm, and violation of the Uniform Firearms Act. On appeal to this Court, it is appellant's primary contention that the trial judge erred in his instructions to the jury relating to the appellant's mental capacity to commit the crimes charged.[1] Specifically, he first

---

[1] We have also considered appellant's contention that events at the trial and statements made by opposing counsel resulted in incurable prejudice to the appellant. A careful review of the record has convinced us that any incidents or remarks which may have been prejudicial were promptly and properly dealt with by

contends that since he introduced evidence tending to show a lack of intent as to the criminal acts charged, he is entitled to an instruction on the doctrine of diminished responsibility. In addition, appellant maintains that since this evidence was in support of his plea of not guilty by reason of insanity, the Commonwealth should bear the burden of proving sanity beyond a reasonable doubt. We find the trial judge's instructions on these points entirely consistent with present Pennsylvania law and, therefore, affirm.

At the time the incidents giving rise to this case occurred, appellant was a law student at Duquesne Law School. He and some friends had stopped at a bar late one evening where they engaged in a game with a group of which Francis Quinn, the victim, was a member. A fight occurred between the appellant and another member of this group, the intensity of which is in dispute. The Commonwealth witnesses testified that it was a brief scuffle and the appellant received only a minor cut. The defense produced testimony of a melee of some violence in which the appellant was severely battered about the head and face. There was evidence from defense witnesses that immediately following the incident appellant acted strangely and spoke incoherently. Appellant himself testified that he remembers no details of the fight and nothing at all about the subsequent events.

Immediately following the occurrence in the bar, appellant left the premises, entered his car and drove away. When he returned after a brief interval he had a gun, and there is no dispute that he then shot the victim, wounding him in the knee. Friends of the victim testified that they acted immediately to disarm the appellant and in the struggle for the gun he suffered

the trial judge and his instructions to the jury to disregard them were sufficient to avoid damage to this appellant. *Commonwealth v. Hoffman*, 439 Pa. 348, 266 A.2d 726 (1970).

extensive injury. He was hospitalized for medical and psychiatric treatment for some times after the episode.

Appellant pleaded not guilty by reason of insanity. He based his defense on the contention that the injuries he received in the first fight impaired his cognitive functioning to such a degree that at the time he shot the victim he was unaware of what he was doing. A psychiatrist who examined him 2 days after the shooting diagnosed his condition as an organic brain syndrome and testified at the trial that such brain damage could prevent a person from judging the difference between right and wrong. The doctor further testified that the appellant's mental impairment, if sustained in the first fight in the bar, could render him unable to form the specific intent to shoot the victim. Other doctors, called by the Commonwealth, disagreed with this diagnosis and indicated there was no basis on which to form an opinion that any brain damage had occurred or that the appellant was at any time insane.

Appellant argues that in view of the psychiatric testimony presented, the trial judge erred by instructing the jury solely on the *M'Naghten*[2] test for legal sanity. It is his contention that the circumstances of his case required the trial judge to instruct the jury to consider the psychiatrists' testimony not only in their determination of legal sanity, but also in their determination of the appellant's capability to form the requisite intent to commit the crime. As authority for his position, appellant advances the decision in *Commonwealth v. McCusker*, 448 Pa. 382, 292 A.2d 286 (1972).

*McCusker* holds that psychiatric evidence is admissible for the limited purpose of determining whether

---

[2] *The Queen v. M'Naghten*, 10 Cl. & Fin. 200, 8 Eng. Rep. 718 (1843). For a discussion of the adoption of the rule in Pennsylvania, *see Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A.2d 98 (1960).

the accused acted in the heat of passion, even when no evidence is submitted for a defense of complete insanity under the traditional *M'Naghten* test. This holding rose out of a situation in which the defendant in a murder prosecution was attempting to prove by way of a defense that his unbalanced mental state caused him to respond violently to certain events and he was, therefore, guilty not of murder but only of voluntary manslaughter. The Court noted that proof of voluntary manslaughter required a showing that the defendant acted under the influence of a sudden passion, adequately provoked, in the commission of an intentional homicide. Although the adequacy of the provocation always remains an objective standard, the Court stressed that once the standard has been met the defendant still must prove that his response to the provoking event was to act in a heat of passion. Due to the subjective nature of the element of passion, the Court reasoned that the accused should be permitted to introduce evidence relevant to his state of mind at the time of the offense. Psychiatric testimony to the effect that the defendant's impassioned state was rooted in a mental disorder lends support to his contentions and is, therefore, peculiarly relevant to this type of defense.

Prior to *McCusker*, Pennsylvania courts considered psychiatric evidence in only two instances: to determine legal insanity as grounds for complete acquittal and to arrive at an appropriate sentence for a particular defendant. *See Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A.2d 687 (1971), and the cases cited therein. Evidence on the subject of insanity was admitted for the consideration of the jury or judge only as limited by the *M'Naghten* test. The test permits the trier of fact to determine whether the accused labored under such defective reason that he was incapable of knowing what he was doing at the time he committed the offense or, if he did know what he was doing, that he did not

know it was wrong. *Commonwealth v. Woodhouse,* 401 Pa. 242, 164 A.2d 98 (1960). Legal insanity, established under this formula, is grounds for complete acquittal in Pennsylvania. If, however, the fact finder determines that the defendant was capable of understanding the nature and quality of his acts and the difference between right and wrong,[3] the psychiatric testimony cannot be used to refute the elements of the crime charged. *See Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970) (opinion by Justice, now Chief Justice JONES). This has been the long established law in Pennsylvania. The Supreme Court has repeatedly refused to abandon the *M'Naghten* rule in favor of some other test for insanity. *See, e.g., Commonwealth v. Melton,* 406 Pa. 343, 178 A.2d 728 (1962); *Commonwealth v. Woodhouse,* supra. It has with equal tenacity rejected the use of phychiatric testimony as a partial defense negating the element of intent in specific intent crimes. *See, e.g., Commonwealth v. Tomlinson,* supra; *Commonwealth v. Weinstein,* 442 Pa. 70, 274 A.2d 182 (1971), and cases cited therein. Although pressed with theories of diminished capacity or diminished responsibility as supplements to the *M'Naghten* rule, psychiatric testimony has not been accepted to prove the lack of specific intent to commit a criminal act.

*McCusker* does not represent a departure from this line of cases. After specifically reasserting adherence to *M'Naghten's* test, the Court in *McCusker* distinguishes those cases which refuse to recognize something less than legal insanity to prove incapacity to intend a criminal act. The opinion directs itself to an entirely separate consideration: the particular defendant's mental condition during the perpetration of a homicide and whether that condition constituted a heat of passion

---

[3] *See, e.g., Commonwealth v. Heller,* 369 Pa. 457, 87 A.2d 287 (1952), for a discussion of the *M'Naghten* test using this language.

sufficient to reduce his offense from murder to manslaughter. Holding psychiatric testimony relevant and admissible as an aid to proving this highly subjective element provides an additional use for such testimony which is consistent with established principles of Pennsylvania law. "[T]his Court has traditionally allowed an accused to offer testimony in an effort to establish his state of mind at the time of the crime." *Commonwealth v. McCusker,* supra at 391, 282 A.2d at 290.

In spite of the explicit rejection of the doctrine of diminished responsibility, the appellant in the present case feels that the rationale of *McCusker* logically extended compels the adoption of the concept expressed in that doctrine. He argues that it is anomalous to permit consideration of psychiatric testimony to prove that the defendant in a murder charge acted without malice and in the heat of passion, while limiting such evidence in other crimes involving malice. He maintains that according to *McCusker* evidence of mental abnormality should be evaluated to disprove the element of malice present in two of the crimes with which he was charged: assault with intent to maim and aggravated assault and battery. If it could be proven that he acted without malice in committing the acts constituting these crimes, his conviction could be reduced to simple assault and battery. Of course, the other two crimes charged, pointing and discharging a firearm and violation of the Uniform Firearms Act, having no elements of malice, would remain unaffected. This argument is based on a misunderstanding of the term "malice".

Malice as it is defined in law is not simply a general description of an actor's frame of mind. It is susceptible to precise definition: " '. . . malice in the legal sense imports (1) *the absence of all elements of* justification, excuse or *recognized mitigation,* and (2) the presence of either (a) an actual intent to cause the par-

ticular harm which is produced or harm of the same general nature, or (b) the wanton and willful doing of an act with knowledge of circumstances indicating awareness of a plain and strong likelihood that such harm may result.' " *Commonwealth v. Rife,* 454 Pa. 506, 514, 312 A.2d 406, 410 (1973), *quoting* R. Perkins, Criminal Law at 679 (1957) [emphasis by the Court]. Although malice as explained in these terms comprehends the issue of the individual's state of mind, it also includes the lack of mitigating circumstances such as are recognized in law. Thus, in a homicide case, if the defendant proves he acted in a heat of passion which was inspired by adequate provocation and without sufficient time for cool consideration, mitigating circumstances are found by law to exist. In such a case, a murder charge is reduced to voluntary manslaughter, a crime without malice, because a finding of "recognized mitigation" was made.

Recognition of a state of mind which mitigates the offense of murder to that of voluntary manslaughter, however, does not aid a defendant accused of a lesser offense. "To say in such cases that one crime is committed with malice and the other without refers not to a difference in the defendant's state of mind, but to the existence of mitigating circumstances which the law recognizes in homicide cases as sufficient to reduce the offense from murder to voluntary manslaughter [citations omitted] but which in the case of lesser offenses are not relevant to the question of guilt." *Commonwealth v. Rife,* supra at 513, 312 A.2d at 410. Evidence of mental aberration is admissible, by *McCusker,* to prove a state of passion obtaining in an individual at the time he commits a homicide, hence proving he acted without malice due to a finding of "recognized mitigation". *McCusker* is no authority to say that a mental condition not recognized by law as mitigating an offense can be proven by psychiatric testimony. Since

appellant here was convicted of assault with intent to maim and aggravated assault and battery, crimes for which no particular state of mind is recognized in mitigation, this Court could permit consideration of psychiatric evidence tending to disprove a malicious state of mind only by greatly broadening and changing the nature of the present insanity defense under *M'Naghten*.

Appellant proposes we make such a change and allow this type of evidence not only to disprove malice but also to disprove specific intent when that element is included in a crime. It is argued that the logical development of the law surrounding the insanity defense and the growing appreciation of the science of psychiatry leads to the conclusion that evidence of mental disorder is relevant and probative of these issues, and sufficient to call for a reduction of the offense charged. Without suggesting that such testimony would never be relevant to the question of specific intent, we believe that extending the concept of mental incapacity to disprove malice and specific intent required in the present case is unwarranted.

The appellant here was not limited in bringing in either medical or lay witnesses to testify to his mental condition. He and his various witnesses testified that he sustained an injury to his head, spoke incoherently, did not know what he was doing, could not tell the difference between right and wrong, and could not form the specific intent to shoot his victim. Other witnesses testified that no evidence of brain damage existed and, in their opinion, he was sane during the occurrence. The only contention on this point is that the trial judge's instruction to the jury restricted their consideration of the testimony offered to the determination of complete insanity justifying acquittal under the *M'Naghten* test. This argument assumes that the *M'Naghten* test for legal sanity as it was defined by the trial judge restricted the jury from considering

whether the appellant was capable of maliciously caus-
ing harm or specifically intending it. However, legal
insanity as defined in this Commonwealth already bears
on these two elements. An individual without capacity
to understand the nature and quality of his acts is in
essence one who cannot intend specific harm or compre-
hend the necessary results of his wrongful activity.[4]
Therefore, removing the restraints placed around testi-
mony tending to show legal insanity and instructing the
jury to consider the conflicting opinions of the experts
on the question of intent would add nothing of sub-
stance to this appellant's case.

For the appellant to be convicted of aggravated
assault and battery, proof of malice is required, but not
specific intent. This Court has held that in this offense
". . . it is not required that the intent to do injury be
actual or specific. Malice is not limited to a particular
ill will but comprehends reckless conduct from which
injury is likely to result." *Commonwealth v. Lees,* 199
Pa. Superior Ct. 383, 387, 185 A.2d 815, 817 (1962).
Proof that appellant's mental condition was such that
he was incapable of the state of mind necessary to find
malice, *i.e.,* incapable of intending harm or acting wan-
tonly knowing that harm might result, is equivalent
to proof that he cannot understand the nature and
consequences of his acts.[5] If appellant's proof in this

---

[4] *See Commonwealth v. Vogel,* 440 Pa. 1, 268 A.2d 89 (1970)
(opinion by Justice, now Chief Justice, JONES) for an analysis of
the relation of the element of intent to the insanity defense.

[5] *See State v. Gramenz,* 256 Iowa 134, 126 N.W.2d 285 (1964).
In this case the Iowa Supreme Court adopts the doctrine of dimin-
ished responsibility to reduce first degree murder to second degree.
The court refuses to extend the defense to crimes which involve
malice but do not include elements of premeditation or delibera-
tion. The rationale for that position is that the *M'Naghten* standard
traditionally employed in that jurisdiction is sufficient to enable a
defendant to introduce evidence showing that malice is beyond his
mental capacity.

regard had been accepted by the fact finder, he would be entitled to complete acquittal, not merely a reduced charge, through the application of the *M'Naghten* standard.

Appellant argues further that in an offense in which specific intent is an element, such as assault with intent to maim, he could be found incapable of the requisite intent even though sane in the terms of the insanity defense. The facts of this case led the jury to conclude that the appellant was indeed sane. He could understand what he was doing and was capable of discerning that his acts were wrong. Capacity to understand the activity represented in this case, including leaving the scene of a fight by car and returning with a gun, and capacity to perceive the wrongfulness of shooting an individual with that gun, would seem to comprehend capacity to understand and intend the resulting harm. If the defendant did indeed perform the entire series of actions, leading up to and including the shooting, in a fog brought on by the alleged blow to his head, he is not guilty of any crime according to *M'Naghten*. If not, distinguishing an incapacity to intend specific harm from the proven capacity to comprehend the wrongfulness of shooting the victim is asking the jury to battle over a mental boundary so fine and irregular that it is imperceptible.

It is appellant's next contention that the trial judge erred in instructing the jury that the defense carries the burden of proving insanity by the preponderance of the evidence. Although it is admitted that no case law directly supports his position, appellant maintains that the Commonwealth should be required to prove sanity beyond a reasonable doubt. Contrary to appellant's argument, we find that recent Pennsylvania decisions on this issue indicate no change in the present law and that the trial judge accurately stated the law in his charge.

In *Commonwealth v. Vogel,* supra, individual justices of the Supreme Court discussed at length the differing views on the burden of production and the burden of persuasion in cases where an insanity defense is made. Mr. Justice, now Chief Justice, JONES, in his opinion in support of the *per curiam* order, clearly declined to adopt a rule placing the burden of proof beyond a reasonable doubt on the Commonwealth whenever the defense introduced evidence of insanity. Although the opinion recognized that under Pennsylvania's *M'Naghten* test legal insanity may bear on the criminal element of intent, insanity remains a defense which if proven avoids punishment for the defendant claiming it, and requires treatment instead of incarceration. We disagree with appellant that the fact that other views were aired in the discussion of this issue indicates a change is taking place in the present law. Later cases have interpreted *Vogel* as leaving the burden of proving insanity undisturbed. *Commonwealth v. Pomponi,* 447 Pa. 154, 284 A.2d 708 (1971); *Commonwealth v. Zlatovich,* 440 Pa. 388, 269 A.2d 469 (1970).

Accordingly, we find that the trial judge's instructions relating to appellant's insanity defense correctly stated the law of this Commonwealth both in limiting the standard of legal insanity to the *M'Naghten* test and in placing the burden of proof by a preponderance of the evidence on the defense.

Judgment affirmed.

CONCURRING OPINION BY SPAETH, J.:

I join in affirming the judgment but only because I find the trial judge's instructions to the jury in accordance with the most recent decisions of our Supreme Court. I believe that examination of those decisions will lead to the conclusion that the law on insanity is in such a state of uncertainty that the time has come to

restate it. Accordingly, I respectfully express the hope that an appeal to the Supreme Court will be requested and allowed.

## The Burden of Proving Insanity

### A.

In the present case appellant pleaded not guilty by reason of insanity, and introduced psychiatric testimony in support of the plea, which the Commonwealth rebutted by other psychiatric testimony. In these circumstances, as the trial judge told the jury, it was the burden of appellant to prove insanity by a fair preponderance of the evidence.

It is true that Mr. Justice ROBERTS has expressed a different opinion in *Commonwealth v. Vogel*, 440 Pa. 1, 268 A. 2d 89 (1970). That opinion, however, has not secured the support of a majority of the Supreme Court.

In *Commonwealth v. Vogel, supra,* the Court divided four to two in support of a *per curiam* order reversing judgments of sentence and awarding a new trial. One opinion was by Mr. Justice (now Mr. Chief Justice) JONES, joined by Mr. Justice O'BRIEN; a second was by Mr. Justice ROBERTS; and a third by Mr. Justice POMEROY. Mr. Chief Justice BELL, joined by Mr. Justice EAGEN, dissented.

It appeared that the defendant had shot and killed two persons in the course of committing a robbery. Evidently there was no substantial issue regarding the facts, the trial rather depending upon the resolution of the defendant's plea of not guilty by reason of insanity. In support of the plea the defendant produced evidence of his discharge from the Air Force because of mental illness and the testimony of three eminently qualified psychiatrists, each of whom expressed without qualification the opinion that the defendant was legally insane. In response the Commonwealth offered no evi-

dence, relying instead "upon the presumption of sanity and the testimony of various witnesses as to the circumstances surrounding the robbery and killings." *Id.* at 6, 268 A. 2d at 92.

The dissenting Justices were of the view that the Commonwealth was entitled to take this position, *i.e.,* that the jury could disregard the testimony by the three psychiatrists and assign to the evidence of the circumstances surrounding the crime such weight as it chose. *Id.* at 30-32, 268 A. 2d at 101. The four Justices constituting the majority of the Court were in agreement in rejecting this conclusion, Mr. Justice JONES explaining this result as follows:

"The Commonwealth argues that the verdict is supported by the presumption of sanity, and that the jury may choose to disbelieve any witness. A verdict must be based upon evidence, and a presumption is not evidence. A verdict may not be based solely upon a presumption where there is evidence which credibly contradicts the presumption. Allison v. Snelling & Snelling, Inc., 425 Pa. 519, 229 A. 2d 861 (1967). See Commonwealth v. Wucherer, 351 Pa. 305, 41 A. 2d 574 (1945). The function of a presumption is to reach a presumed conclusion of fact, in the *absence* of credible evidence to the contrary. Waugh v. Commonwealth, 394 Pa. 166, 146 A. 2d 297 (1958). When sufficient or adequate evidence is presented to prove legal insanity, the presumption of sanity disappears as a rule of law, and a verdict may not be based thereon. IX Wigmore on Evidence, §2491 (3d ed. 1940). [Footnote omitted.]

"In the case at bar, the defendant produced evidence of legal insanity, sufficient and adequate in every respect, which was neither rebutted nor contradicted nor impugned, while the Commonwealth utterly failed to produce *any* evidence of legal sanity. Under such circumstances, the legal *presumption* of sanity is not sufficient to permit, in the face of the *uncontradicted* evi-

dence of insanity, a finding of guilt. The instant record being devoid of *any* evidence which might support the verdict, such verdict cannot stand." *Id.* at 14, 268 A.2d at 96.

The point on which Mr. Justice JONES and Mr. Justice O'BRIEN, on the one hand, and Mr. Justice ROBERTS and Mr. Justice POMEROY, on the other, differed was with respect to what should be the burden of proof if the Commonwealth, instead of relying on the presumption of sanity, produced evidence to rebut the presumption.

Mr. Justice JONES, speaking for himself and Mr. Justice O'BRIEN, adopted the following position:

"Appellant herein urges that this Court should overrule the long-standing case law in Pennsylvania, and adopt the federal rule which would require the prosecution to prove sanity beyond a reasonable doubt, as an element of the crime. I cannot accept the premise that sanity is necessarily an *element* of every crime. To the contrary, I view insanity as being the basis upon which society offers treatment rather than punishment to one who has committed a crime. *See* H. Rome, *M'Naghten, Durham and Psychiatry*, 34 F.R.D. 93 (1964). Although every element of a crime can be established beyond a reasonable doubt, including the element of intent to do the act, insanity may still be asserted as a defense in Pennsylvania . . . .

"We specifically decline to adopt the federal rule as to the burden of proving sanity or insanity. The burden remains on the defendant to prove his insanity by a fair preponderance of the evidence." *Id.* at 11, 268 A.2d at 95.

In contrast to this statement, Mr. Justice ROBERTS urged adoption of the federal rule:

"If mens rea, or intent, is an element of the crime of murder, the capacity to form that intent, i.e., legal sanity, must likewise be an element of the crime. Clear-

ly 'it is necessary, in order to prove the intent, to show that the perpetrator was capable of forming the requisite intent.' Bradford v. State, 234 Md. 505, 512, 200 A.2d 150, 154 (1964). I therefore cannot agree with the assertion that '[a]n individual may *intentionally* kill someone, with malice aforethought,' even though he is legally insane, i.e., legally incapable of forming the intention. Legal sanity is an essential element of the crime of murder and must be an issue for the Commonwealth to prove beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 90 S. Ct. 1068 (1970). Thus I believe that the trial court was in error in the instant case when it charged the jury that the burden was on the defendant to prove by a preponderance of the evidence that he was *not* sane. This charge, in effect, required the defendant to disprove an element of the crime of murder and I do not believe this to be proper.

"I would adopt the rule which is now in effect in at least twenty-two of the States and in the federal courts. See cases cited in 17 A.L.R. 3d 158-59. These jurisdictions, taking for granted that most men are sane, do not initially require the prosecution to prove sanity, for it will be presumed. But if the defendant introduces evidence indicating that he is not sane, the presumption can no longer be relied upon by the State and the prosecution must prove sanity, as it must all other elements of the crime, beyond a reasonable doubt." [Footnote omitted.] *Id.* at 16, 268 A.2d at 91.

Mr. Justice POMEROY agreed with Mr. Justice ROBERT's conclusion but made "certain further observations as to the effect of the presumption of sanity and the burdens of proof and production in a case such as this." *Id.* at 17, 268 A.2d at 102. It seems fair to summarize his opinion as agreeing with Mr. Justice JONES,

that a presumption is not evidence, but as disagreeing with him, and agreeing with Mr. Justice ROBERTS, that sanity is an element of the crime. *Id.* at 19-20, 268 A.2d at 103-04.

In the present case the trial judge instructed the jury in accordance with the position adopted by Mr. Justice JONES and Mr. Justice O'BRIEN in *Commonwealth v. Vogel, supra.* It would have been error for him to have done otherwise, for although Mr. Justice JONES's opinion was joined only by Mr. Justice O'BRIEN, it is nevertheless apparent that the dissenting Justices in *Vogel,* Mr. Chief Justice BELL and Mr. Justice EAGEN, agreed with Mr. Justice JONES and Mr. Justice O'BRIEN in "specifically declin[ing] to adopt the federal rule."

That this was indeed so was established in *Commonwealth v. Zlatovich,* 440 Pa. 388, 269 A.2d 469 (1970), where the opinion for the Court was by Mr. Justice EAGEN, joined by Mr. Chief Justice BELL, Mr. Justice JONES, and Mr. Justice O'BRIEN. The facts there were in essence as in the present case: The defendant pleaded not guilty by reason of insanity, and introduced psychiatric testimony in support of the plea; the Commonwealth, "unlike the situation presented in Commonwealth v. Vogel . . . *did* offer evidence which warranted a finding of sanity . . . ." *Id.* at 393, 269 A.2d at 471. (It may be noted in passing that in contrast to the present case, this evidence did not include any psychiatric testimony but was only by lay witnesses. *Id.*) Also as in the present case the trial judge instructed the jury that the defendant had the burden of proving insanity by the preponderance of the evidence. In upholding this instruction, Mr. Justice EAGEN said: "It is next complained that the trial court erred in its instructions to the jury on the burden of proof as to the issue of insanity. In the course of the charge, the court

stated, in part, that the accused had the burden of proving insanity by the preponderance of the evidence and that the Commonwealth did not have to affirmatively prove sanity. Appellant argues that it was erroneous to so instruct the jury; however, this same contention was rejected by a majority of this Court in Commonwealth v. Vogel, supra, and nothing would be gained by further discussion here." *Id.* at 393, 269 A.2d at 471.

Mr. Justice COHEN concurred in this result; Mr. Justice ROBERTS dissented, repeating his view, expressed in *Commonwealth v. Vogel, supra,* that the Commonwealth should be required to prove sanity beyond a reasonable doubt; Mr. Justice POMEROY also dissented, also repeating the view he had expressed in *Vogel,* but additionally finding error in the charge "under any of the diverse views expressed by the members of the Court who constituted a majority in Vogel," *id.* at 399, 269 A.2d at 474, in that the charge did not make it clear that the presumption of sanity was not evidence and once rebutted, disappeared.

Since the decision in *Commonwealth v. Zlatovich, supra,* was filed, the composition of the Supreme Court has changed in that Mr. Chief Justice BELL and Mr. Justice COHEN are no longer members of the Court. In essence, in the present case defense counsel asks us to hold that the trial judge should have charged that the Commonwealth had the burden of proving appellant's sanity on the assumption that Mr. Justice NIX and Mr. Justice MANDERINO are of the same view as Mr. Justice ROBERTS and Mr. Justice POMEROY. There is, however, no basis for such an assumption; we simply do not know the view of either Mr. Justice NIX or Mr. Justice MANDERINO, and whether their accession to the court will result in *Zlatovich* being overruled must abide the event.

## B.

I believe that the Supreme Court must overrule *Zlatovich* if the *M'Naghten* rule continues to be applied in Pennsylvania.

In concluding that where there is conflicting evidence the defendant should have the burden of proving insanity by the fair preponderance of the evidence, Mr. Justice JONES in *Commonwealth v. Vogel, supra,* offered two rationales, one based on the *M'Naghten* rule:

"Inherent in this rule [that the defendant has the burden of proving his insanity] is the rationale that sanity is *not* an element of the crime but, rather, involves . . . a state of mentality which would render punishment by way of confinement in a penal institution futile and would require institutional confinement of the defendant for treatment rather than for punishment . . . . In my view, insanity is a defense upon the proof of which an accused may avoid punishment for the crime committed . . . .

"In a jurisdiction which uses the 'irresistible impulse' test to determine legal insanity . . . the question of insanity, at the least, is closely connected with the question of whether the killing was intentional. [Footnote omitted.] It may be appropriate, in such a jurisdiction, that the burden of proof as to both should be the same, since they are both concerned with what is clearly an element of the crime—*i.e.,* the intent to kill. In Pennsylvania, a person may be legally insane *either* if he is incapable of knowing what he was doing, *or* if he does know what he was doing but was incapable of judging that it was wrong to do so. Commonwealth v. Woodhouse, 401 Pa. 242, 164 A.2d 98 (1960).

"As indicated by the facts in the instant case, legal insanity in this Commonwealth may or may not bear on the question of intent. The prosecution presented ample evidence that Vogel planned his crime, from

which evidence intention might be inferred, but no evidence that Vogel could appreciate the character of his actions. An individual may intentionally kill someone, with malice aforethought, but be incapable of distinguishing right from wrong in so doing. Under such circumstances, the elements of murder would be met (Commonwealth v. Kirkland, 413 Pa. 48, 195 A.2d 338 (1963)), but the individual's legal insanity would properly necessitate a verdict of not guilty by reason of insanity. This is the type of situation which is demonstrated on the face of the instant record." *Id.* at 10-11, 268 A.2d at 94.

In considering this statement, illustrative paraphrase may be helpful. Suppose X shoots and kills Y because he thinks X is a deadly snake. X would be legally insane under the first part of *M'Naghten* because "incapable of knowing what he was doing." His insanity prevented him from forming an intent to kill, such an intent being an element of the crime that X was charged with committing. The burden of proof of essential elements must be on the prosecution. *In re Winship,* 397 U.S. 358 (1970). Suppose, however, X knew he was killing a man but thought he was acting pursuant to Divine command. He would then be legally insane under the second part of *M'Naghten* because "incapable of judging that it was wrong [to kill]." Since X knew that Y was a man, and intended to kill him, his sanity does not affect proof of an essential element of the crime and the burden may properly be placed on him to prove that he thought that he was acting pursuant to Divine command.*

---

\* If this analysis is a correct statement of the views of Mr. Justice JONES, it would seem that the disagreement between him and Mr. Justice ROBERTS is not so great as might at first appear. Mr. Justice ROBERTS, as I understand his opinion in *Vogel* regards intent as an element of the crime and sanity as a matter of proof for the prosecution in every case in which the defendant's insanity

When, in *Commonwealth v. Zlatovich, supra* at 393, 269 A.2d at 471, the Court held "that the accused had the burden of proving insanity by the preponderance of the evidence and that the Commonwealth did not have to affirmatively prove insanity," it simply cited *Vogel,* adding that "nothing would be gained by further discussion here." This brief statement gives no clue as to whether the majority in *Zlatovich* agreed with the analysis of Mr. Justice JONES in *Vogel,* that the rule that the accused has the burden of proof is related to the *M'Naghten* rule and depends upon what part of that rule the accused is relying upon.

I think that Mr. Justice JONES is correct. *Winship* and *M'Naghten* require such uncertainty as to who has the burden; but this result has no logic. If an accused is entitled to be found "not guilty by reason of insanity," it would seem that the same rules should apply, whatever the nature of the insanity. Why should a person insane because he thought his victim a snake be able to require a stricter standard of proof of the Commonwealth than a person insane because he thought himself an instrument of God? Or to state the issue conversely: Why should a person insane because he has a delusion as to the moral quality of the act he knows he is committing ( *e.g.,* he knows he is committing homicide but believes it proper as in accordance with God's will) stand a poorer chance of acquittal (because he must prove his delusion) than one insane because he has a delusion as to what act he is committing ( *e.g.,* he thinks he is killing not a man but a snake, in which case the Commonwealth must prove as an element of the crime that he intended to kill a man)?

---

is put in issue, whether it be claimed, under the first part of *M'Naghten,* that the insanity inheres in the defendant being "incapable of knowing what he was doing" or, under the second part of *M'Naghten,* in his being "incapable of judging that it was wrong."

I recognize that these questions can be turned around, *i.e.*, why should the Commonwealth have a greater burden in one case than in another? The answer, I suggest, is that there is no reason, any more than there is any reason why the burden should vary for different defendants in different cases. I believe we have been led to this conundrum because of the way in which we have defined insanity.

## The Definition of Insanity

In the present case the trial judge in instructing the jury defined insanity in accordance with the *M'Naghten* rule. This too was in accordance with the most recent decisions of the Supreme Court. *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972) ;* *Com-*

---

* I find I cannot agree either with Judge JACOBS or Judge HOFFMAN regarding *McCusker*. It does not seem to me that *McCusker* represents an "explicit rejection of the doctrine of diminished responsibility," as Judge JACOBS suggests, but rather, as Judge HOFFMAN suggests, announces that doctrine. (*See* Majority Opinion at 92 with Dissenting Opinion at 120 n.3.) Nevertheless, *McCusker* seems to me inapplicable to the present case, although I grant that if an appeal is requested and allowed, the Supreme Court might decide to extend it and make it applicable.

*McCusker* held that in a murder prosecution the defendant could offer psychiatric evidence that he had acted in the heat of passion having its origin in a mental disorder. Proof of such passion would show that the defendant had not acted with malice. Thereby the charge of murder would be reduced to voluntary manslaughter. Perhaps Judge HOFFMAN is correct that as a matter of logic *McCusker* should be extended to other than murder cases where the defendant wishes to disprove malice ; and it is true that malice was an element of aggravated assault and battery and of assault with intent to maim, as those crimes were defined when appellant was charged and tried. Act of June 24, 1939, P. L. 872, §§709 and 712, 18 P.S. §§4709 and 4712, repealed Act of Dec. 6, 1972, P. L. 1482, No. 334, §5. This issue need not be decided, however, for appellant did not try to disprove malice.

What appellant did try to disprove was intent, and *McCusker* simply does not hold that evidence of a mental disorder is admis-

*monwealth v. Woodhouse,* 401 Pa. 242, 164 A.2d 98 (1960). However, as the preceding discussion has revealed, as one examines the question of who should have the burden of proving insanity, one is drawn on to the question of how insanity itself should be defined.

I have come to the conclusion that the *M'Naghten* rule should be abolished. In coming to this conclusion I have been aided by the recent notable re-examination of the insanity defense in *United States v. Brawner,* 471 F. 2d 969 (D.C. Cir. 1972).

---

sible on the issue of intent. "Intent" is not the same as "malice," and evidence pertinent to one may not be pertinent to the other. As noted, in *McCusker* the evidence was offered to show passion. " 'Passion, as used in . . . defining manslaughter . . . means any of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection. . . .' " *Commonwealth v. Colandro,* 231 Pa. 343, 350-51, 80 A. 571, 574 (1911). Thus, proof of passion may disprove malice, for "[m]alice in its legal sense exists . . . where there is a particular ill will, . . . a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty." *Commonwealth v. Bolish,* 381 Pa. 500, 510-11, 113 A. 2d 464, 470 (1955). Proof of passion cannot, however, disprove intent.

As I understand Judge HOFFMAN's opinion, he would acknowledge that *McCusker* did not involve an offer to disprove intent but he would extend it to include such an offer. Again, he may be correct that such an extension should be made. *See* Comment, 77 Dick. L. Rev. 435, 440-41 (1972) ("[e]xtension [of *McCusker*] is warranted because if psychiatric evidence is relevant and probative to determine heat of passion [footnote omitted], the evidence is just as relevant and probative in regard to the specific intent to kill. . . ."). However, so far the Supreme Court has declined to make the extension. *Commonwealth v. Ahearn,* 421 Pa. 311, 218 A. 2d 561 (1966). Since it is not an extension logically derived from the rationale of *McCusker* but rather is dependent on one's confidence in psychiatric judgments, whether it should be made ought, in my view, be left to the Supreme Court, and to a case where the defendant has raised the issue with more precision than appellant has here.

In *Brawner* the principal issues related to the defendant's plea of insanity. After the case had been argued to a panel, the court *sua sponte* ordered rehearing en banc, announcing its "intention to reconsider the appropriate standard for the insanity defense." *Id.* at 973. Special counsel was appointed as *amicus curiae* " 'to research the authorities on the issue of criminal responsibility,' to advise the court thereon and to present oral argument." *Id.* In addition, a number of organizations were invited to submit briefs *amicus curiae;* accepting this invitation were The American Civil Liberties Union Fund of the National Capitol Area, the National Legal Aid and Defender Association, the National District Attorneys Association, the Georgetown Legal Intern Project, the American Psychiatric Association, the American Psychological Association, and the Bar Association of the District of Columbia. From this comprehensive presentation two opinions resulted, one, for the court, by Circuit Judge LEVENTHAL, and a separate opinion by Chief Judge BAZELON.

The difference between the opinions may be summarized by quoting the opening paragraph of The Chief Judge's opinion: "We are unanimous in our decision today to abandon the formulation of criminal responsibility adopted eighteen years ago in Durham v. United States, 94 U.S. App. D.C. 228, 214 F. 2d 862 (1954). We held there that a person is not responsible for a criminal act if the act was the product of mental disease or mental defect. In place of the Durham jury instruction, juries will now be instructed in terms of the American Law Institute test that a person is not responsible for a criminal act if as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. But the adoption of this new test is largely an anticlimax, for

even though Durham's language survived until today's decision, the significant differences between our approach and the approach of the ALI test vanished many years ago. As described in Judge LEVENTHAL's scholarly opinion, the ALI test may make possible an improvement in the adjudication of the responsibility issue. But on the whole I fear that the change made by the Court today is primarily one of form rather than of substance." [Footnote omitted.] *Id.* at 1010. The Chief Judge stated that he would adopt the following test: "Our instruction to the jury should provide that a defendant is not responsible *if at the time of his unlawful conduct his mental or emotional processes or behavior controls were impaired to such an extent that he cannot justly be held responsible for his act.* This test would ask the psychiatrist a single question: what is the nature of the impairment of the defendant's mental and emotional processes and behavior controls? It would leave for the jury the question whether that impairment is sufficient to relieve the defendant of responsibility for the particular act charged." [Footnote omitted.] *Id.* at 1032.

It would be an idle display of borrowed learning to undertake to summarize the exchange of reasoning or the authorities collected in the opinions of Circuit Judge LEVENTHAL and Chief Judge BAZELON; one can only express gratitude for them. It is, however, of interest to note that when the issue of criminal responsibility was reexamined by our Supreme Court in *Commonwealth v. Woodhouse, supra,* Mr. Justice BOK stated in dissent:

"I would abolish the *M'Naghten* Rule.

. . . .

"The Rule is not used in any other field where mental competence is at issue. When a commission in lunacy is had or proceedings are taken against a person for the appointment of a guardian, the point of inquiry

is not whether the patient knows right from wrong but whether he is mentally ill or incapable of handling his property and affairs and is likely to become the victim of designing persons. The Rule does not apply even when the issue is whether he is mentally capable of standing trial and making his defense. The concern of The Mental Health Act of June 12, 1951, P.L. 533, 50 P.S. §1071 et seq., with regard to those *accused* of crime is with mental health, not with right and wrong. Why should the law's purpose be different with those *convicted* of crime?" *Id.* at 264, 164 A.2d at 109-10. He further stated: "The majority refuses to move against the Rule because no satisfactory alternative to it has been presented. I believe that none is needed . . . .

. . . .

"If jurors are . . . capable of knowing the difference between right and wrong without being given standards for those terms, they should be equally able, also without given standards, to assess sanity and insanity." *Id.* at 266, 164 A.2d at 110-11.

Finally, in a passage that may instructively be compared with the test that Chief Judge BAZELON would adopt, Mr. Justice BOK stated that he would leave to the jury the task of "decid[ing] whether under all of the circumstances, including [the defendant's] mental derangement as and if the jury sees it, it would be just to hold [the defendant] accountable: this was the law of England at one period before *M'Naghten.*" [Citation omitted.] *Id.* at 266, 164 A.2d at 110.

For my part, I am persuaded by this reasoning and by the considerations advanced by Chief Judge BAZELON in *United States v. Brawner, supra.*

---

DISSENTING OPINION BY HOFFMAN, J.:

In this appeal, we must decide whether a defendant is entitled to a charge on diminished responsibility where he has offered psychiatric testimony to the ef-

fect that he lacked the specific intent to commit a crime because of a mental disease or disorder. Concomitant with this contention, appellant argues that the trial court erred in instructing the jury that the Commonwealth is entitled to a presumption of sanity, since the defense had produced expert evidence concluding that the defendant was not sane at the time of the commission of the alleged crime.

This case involves a twenty-nine year old defendant, in his last year of study at Duquesne Law School, who became involved in a fight in a bar and a subsequent shooting. On the evening of October 21, 1971, appellant and some friends were in the Forbes Street Inn, a small bar in Pittsburgh. At some point, there was an argument followed by a fight between the appellant and the complainant, Francis Quinn.

A serious factual dispute arose at time of trial as to the severity of this incident. Commonwealth's witnesses described the fight as a "brief scuffle" during which the defendant suffered a minor cut. William Ferens and William K. Julin, defense witnesses, testified that the fight, while short, was a violent brawl, from which appellant sustained extensive injuries mostly to the head. Ferens stated that after the fight, the defendant was babbling to himself and did not seem to recognize Ferens, who accompanied the appellant to the bar and was a close friend. Julin confirmed the violence of the fight and defendant's head injuries and his unusual behavior. Robert K. Stitt, an attorney, testified that when he visited the appellant at the hospital following the incident, appellant was incoherent, could not remember events after the fight, and seemed badly battered about the head and face.

Appellant testified that he had no memory of events immediately after the fight, including his leaving the bar, getting a gun, and shooting the victim. There was no contention, however, that appellant did not in fact

shoot the victim when he emerged from the bar, wounding him in the knee. Following the shooting, appellant was confined in a hospital for ten days receiving both psychiatric and medical treatment for loss of memory.

The main defense witness was Doctor Susan Krienbrook, a psychiatrist and Acting Superintendent of Woodville State Hospital, who examined the defendant two days after the shooting. Based on a hypothetical question and on the results of her examination, she stated unequivocally that, in her expert opinion, the defendant was suffering from an organic brain syndrome brought on by blows to the head, and that because of this, he could not, at the time of the shooting, tell right from wrong or form the specific intent to shoot Mr. Quinn. This diagnosis, she stated, was confirmed by another doctor to whom she referred the defendant. Commonwealth offered various rebuttal witnesses including Doctor E. H. Davis of the Allegheny County Behavior Clinic, who did not personally examine the appellant, but who testified that on the basis of the hospital records he could not find evidence of brain damage and nothing from which he could conclude that defendant was not sane at the time of the shooting.

At the conclusion of the case, the trial judge charged the jury on the applicable law. The jury retired and later returned with a verdict of guilty on four counts: assault with intent to maim, aggravated assault and battery, pointing and discharging a firearm, and violation of the Uniform Firearms Act. From a denial of post-trial motions, the appellant has taken this appeal.

Appellant's major contentions concern the trial court's charge to the jury.[1] Over the objection of de-

---

[1] Appellant also calls attention to certain of the district attorney's remarks and comments during the conduct of the trial and in closing argument. Each of these remarks, which were objected to by defense counsel, were improper and inflammatory. An examina-

fense counsel, and despite psychiatric testimony denying appellant's sanity at the time of the shooting, the trial judge instructed the jury that any such testimony was entitled to little weight and could only be considered on the question of sanity under the M'Naghten test—whether the defendant understands the nature and quality of his act; and, whether he knows the difference from right and wrong and that the unlawful act is wrong. He refused to instruct the jury that said testimony should be considered in deciding whether the appellant could form the specific intent to commit the proscribed act. Furthermore, the trial court charged that the Commonwealth was entitled to a presumption of sanity, and that the defendant had to prove insanity by a fair preponderance of the evidence.

Except for a number of *mala prohibita* crimes, most common law and statutory offenses require proof of both the *actus reus* (the prohibited act) and the *mens rea* (intent to commit the offense). Inherent in the *mens rea* element is the capacity of the actor to form the requisite intent.

As Justice ROBERTS, so aptly and decisively said in *Commonwealth v. Vogel*, 440 Pa. 1, 15, 268 A. 2d 90 (1970) (Opinion in Support of the Order Per Curiam) : "If mens rea, or intent, is an element of the crime . . . , the capacity to form that intent, i.e., legal sanity, must likewise be an element of the crime. Clearly 'it is necessary, in order to prove the intent, to show that the per-

tion of the notes of testimony reveals, however, that the trial court was careful to strike these remarks and give the jury cautionary instructions to disregard these remarks altogether as being irrelevant or wholly improper. We believe that the trial court by its instructions cured the effect of the district attorney's improper remarks, and that this ground for reversal may not stand. *Commonwealth v. Lowery*, 440 Pa. 361, 269 A. 2d 724 (1970) ; *Commonwealth v. Ross*, 403 Pa. 358, 169 A. 2d 780, cert. den. 368 U.S. 904 (1961).

petrator was capable of forming the requisite intent.' Bradford v. State, 234 Md. 505, 512, 200 A. 2d 150, 154 (1964). I therefore cannot agree with the assertion that '[a]n individual may *intentionally* kill someone, with malice aforethought,' even though he is legally insane, i.e., legally incapable of forming the intention."

In the landmark decision of *In re Winship*, 397 U.S. 358 (1970), in which the Supreme Court of the United States declared that juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt when they are charged with a criminal violation, Justice BRENNAN, who delivered the Opinion of the Court, citing *Davis v. United States*, 160 U.S. 469, 493 (1895), said: " '[H]e [the defendant] is entitled to an acquittal of the specific crime charged, if upon all the evidence, there is reasonable doubt whether he was capable in law of committing [the] crime . . . . No man should be deprived of his life [or his liberty] under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them . . . is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged.' " 397 U.S. at 363.

The real issue then is just what constitutes legal insanity? Where criminal intent is an element of the crime, it has been held that the intentional commission of an act in itself unlawful creates a rebuttable presumption that the perpetrator acted with the requisite intent. *Commonwealth v. Steele*, 362 Pa. 427, 66 A. 2d 825 (1949); *Commonwealth v. Daynarowicz*, 275 Pa. 235, 119 A. 77 (1922). The presumption is that one intended the necessary and probable consequence of his act. See *Commonwealth v. Steele*, supra; Reimel, Pennsylvania Criminal Law, page 175.

Under our statutes, as under the common law, a man has the right not to stand trial or pay the penalty

for an act if his mental condition is such that he fulfills the legal test of insanity, i.e., that at the time of the commission of the crime, the defendant was so deprived of his memory and understanding that he was unable to comprehend the nature of his action, and "to distinguish between right and wrong" in reference to the particular act in question. *M'Naghten's Case*, 1 C. & K. 130 (1843); adopted in Pennsylvania, *Brown v. Commonwealth*, 78 Pa. 122 (1875); see, generally, 19 P.S. §1351 et seq. Our Supreme Court has refused to abandon this test and to substitute in its place a psychiatrically devised rule or the so-called Durham rule.[2] *Commonwealth v. Melton*, 406 Pa. 343, 178 A. 2d 728 (1962), *cert. den.*, 371 U.S. 851.

The mere pronouncement by medical science that the accused is "insane", or that he is a mentally or morally weak person, or one suffering from an uncontrollable temper, is insufficient in law to constitute the defense of insanity so as to require an acquittal. *Commonwealth v. Woodhouse*, 401 Pa. 242, 164 A. 2d 98 (1960); *Commonwealth v. Cressinger*, 193 Pa. 326, 44 A. 433 (1899); *Commonwealth v. Eckerd*, 174 Pa. 137, 34 A. 305 (1896); *Taylor v. Commonwealth*, 109 Pa. 262 (1885).

As early as 1846, our Supreme Court recognized that there may be circumstances where the accused, while not legally insane as to force an acquittal, may be so mentally affected that he is incapable of consciously forming the purpose or intent to commit a crime. *Commonwealth v. Mosler*, 4 Pa. 264 (1846). Early Pennsylvania cases, though not involving psychiatric testimony, indicate that our courts recognized certain circumstances which would reduce the degree of the crime. In *Jones v. Commonwealth*, 75 Pa. 403

---

[2] *Durham v. United States*, 214 F. 2d 862 (D.C. Cir. 1954), 45 A.L.R. 2d 1430.

(1874), the Supreme Court reversed a conviction of an intoxicated defendant for first-degree murder, and entered its own verdict for murder in the second-degree. The Court reasoned: ". . . [C]auses may affect his intellect, preventing reflection and hurrying onward his unhinged mind to rash and inconsiderate resolutions, incompatible with the deliberation and premeditation defining murder in the first degree. When the evidence convinces us of the inability of the prisoner to think, reflect, and weigh the nature of his act, we must hesitate before pronouncing the degree of his offense." 75 Pa. at 406. It is because alcohol affects one's mental state that the *Jones* court determined that degree of the appellant's offense required reduction. See also, *Commonwealth v. Hillman*, 189 Pa. 548, 42 A. 196 (1899), wherein our Supreme Court approved the trial court's instructions to the jury permitting the jury to find defendant not guilty of murder in the first-degree, "[i]f the mental condition of the defendant was such that he could not consciously form the purpose to kill . . . ." 189 Pa. at 556. It is interesting to note that this case was decided 24 years after this Commonwealth approved the *M'Naghten* test as the law on insanity.

In the early 1960's, two cases of our Supreme Court were of great signifance, but which later were to be inaccurately cited in support of a refusal to accept psychiatric testimony in all cases where legal insanity under the *M'Naghten* test could not be established. In *Commonwealth v. Jordan*, 407 Pa. 575, 181 A. 2d 310 (1962), the Pennsylvania Supreme Court affirmed a conviction for first-degree murder and rejected defense counsel's objections to the trial court's charge on psychiatric testimony, saying that: "[E]xpert testimony is entitled to little weight as against positive facts. Expert medical opinions are especially entitled to little or no weight when based upon insufficient or (partly) erroneous facts or a feigned state of mind or an inac-

curate past history, or upon unreasonable deductions." 407 Pa. at 583. The very next year, citing this language in *Jordan,* our Supreme Court once again rejected psychiatric testimony on the ground that "[t]he rule regarding the *weight of expert testimony* in this class of case is well settled." *Commonwealth v. Carroll,* 412 Pa. 525, 535, 194 A. 2d 911 (1963). In each of these cases, our Supreme Court did not, as they could have, dismiss the evidence as incompetent and inconsistent with the *M'Naghten* test, but instead, grounded its decision on the determination that the testimony was entitled to "little or no weight" properly discounted by the trier-of-fact in the face of the incriminating evidence.

The first case to positively state that psychiatric testimony could not be admitted in cases where legal insanity could not be established, except at the sentencing stage where it had traditionally been accepted, was *Commonwealth v. Ahearn,* 421 Pa. 311, 218 A. 2d 561 (1966). The vote of the Court was 4-3, with strong dissenting opinions by Justices COHEN and ROBERTS (to which Justice JONES joined). While admitting that the trier-of-fact should always have the right to dislieve the testimony of experts, Justice COHEN pointed out that the evidence should be admissible to show that the appellant lacked the specific intent necessary for the offense of murder in the first-degree: "I base my belief on the following reasons: (1) . . . The prosecution is required to prove beyond a reasonable doubt that a certain specific state of mind (cold bloodedness) existed in defendant at the time of the homicide, and defendant's evidence is *logically very relevant* on that issue. (2) Other jurisdictions *that firmly adhere to M'Naghten's rule,* regarding insanity as a complete defense to criminal responsibility, nevertheless, admit this kind of evidence to show that the state of mind specifically required by the definition of first degree murder

did not exist in defendant at the time of the crime.   See, e.g., California decisions: People v. Henderson, 386 P. 2d 677 (1963); People v. Gorshen, 336 P. 2d 492 (1959); People v. Wells, 202 P. 2d 53 (1949); Iowa: State v. Gramenz, 126 N.W. 2d 285 (1964); Colorado: Battalino v. People, 199 P. 2d 897 (1948) (containing many other cases); New Jersey: State v. DiPaolo, 168 A. 2d 401 (1961).   (3) The evidence cannot be excluded on the basis of the general unreliability (as opposed to lack of weight in a particular case because of cross-examination or lack of foundation, etc.) of the 'science' of psychiatry when one considers the universal acceptance of such evidence on the issue of legal insanity which *completely* negates criminal responsibility.   (4) Evidence of intoxication, use of drugs, etc., is admitted where it is introduced for the purpose of creating a reasonable doubt regarding the existence of first degree murder state of mind.   Commonwealth v. McCausland, 348 Pa. 275, 35 A. 2d 70 (1944).   How can we admit such evidence in behalf of a willful intoxicant but not in behalf of an individual who, through no fault of his own, has a mental disorder?   (5) All thoughtful commentators I have read have come to the same conclusion. (Citations omitted).   (6) I have found no persuasive reasons against admission."   421 Pa. at 330-331.

Following *Ahearn*, two later decisions on the same issue, *Commonwealth v. Rightnour*, 435 Pa. 104, 253 A. 2d 644 (1969), and *Commonwealth v. Phelan*, 427 Pa. 265, 234 A. 2d 540 (1967), passed by the same 4-3 split.   In each case, the majority traced *Ahearn* and its predecessors, saying that precedent supported limiting the introduction of psychiatric testimony in order to establish legal insanity.   Justice ROBERTS, in his dissent to *Phelan*, keenly observed that such was not the case, but that, in fact, *Ahearn* had established new law on the subject.   At 283-284 of the opinion, Justice ROBERTS called the case ". . . a departure from prior Penn-

sylvania law . . . I could not sanction then and cannot now. In several of the cases cited by the *Ahearn* majority on the admissibility issue, the court *did* permit the psychiatrist to give his expert opinion as to the defendant's state of mind . . . . In each of these cases [*Carroll* and *Jordan*] we merely questioned the weight to be accorded such evidence and did not rule that the evidence was inadmissible." (Emphasis added.)

When the next case was argued before the Court, a 3-3 split resulted (Justice COHEN died in the interim). *Commonwealth v. Weinstein*, 442 Pa. 70, 274 A. 2d 182 (1971). The same vote was recorded in the last line of *Ahearn* cases. See, *Commonwealth v. Tomlinson*, 446 Pa. 241, 284 A. 2d 687 (1971).

Then, in 1972, the Supreme Court of Pennsylvania made the first serious inroad into the *Ahearn* cases.[3]

---

[3] I am puzzled by the conclusion reached by the Majority of this Court that "McCusker does not represent a departure from this line of cases [*Ahearn* progeny]." 228 Pa. Superior Ct. at 91. The Majority recognizes that prior to *McCusker*, psychiatric testimony was admissible ". . . in only two instances: to determine legal insanity *as grounds for complete acquittal* and to arrive at an appropriate *sentence* for a particular defendant." 228 Pa. Superior Ct. at 90. (Emphasis added.) While *McCusker* ostensibly was limited to allowing psychiatric testimony to reduce a charge of murder to voluntary manslaughter, the effect was a devastating erosion of prior case law. For the first time, the Supreme Court of Pennsylvania decided that psychiatric testimony could be admitted to *reduce the degree* of the offense because of a "diminished capacity." The evidence was not admitted to acquit a defendant or to affect sentencing, but was the basis for an actual reduction in the degree of the crime charged. If we were to literally read the language cited by the Majority from *McCusker*, to wit: "[T]his Court has traditionally allowed an accused to offer testimony in an effort to establish his state of mind at the time of the crime," the inescapable conclusion would be that the issue presented in the instant appeal would perforce be decided in appellant's favor. Appellant asks that a jury consider psychiatric testimony that tends to prove that his "state of mind at the time of the crime"

In a 5-2 decision,[4] and while carefully emphasizing that the *M'Naghten* test was still the law of legal sanity in Pennsylvania, the Court adopted a partial rule of diminished responsibility, reflecting "a natural and logical application of the orderly and authoritative development of the law of evidence in such cases." *Commonwealth v. McCusker*, 448 Pa. 382, 395, 292 A. 2d 286 (1972).

The specific issue before the Court, in *McCusker*, was "whether psychiatric evidence is admissible in a murder prosecution for the limited purpose of determining whether a defendant acted in the heat of passion." 448 Pa. at 384. While the Court dealt only with the question of the admissibility of psychiatric testimony in determining whether a murder conviction should be reduced to voluntary manslaughter because the element of malice was not present, we believe that the clear meaning and interpretation of the case should be extended to affect the rights of the accused to prevent his conviction on charges of an offense which requires proof of specific intent or malice, where psychiatric testimony establishes that the accused was incapable of forming such an intent. If the accused lacks

---

was so affected that he could not form the specific intent or malice necessary to sustain convictions on the charges against him. Indeed, this dissent argues, *infra*, that such reasoning should be applied herein, as a logical extension of *McCusker*. As Justice ROBERTS said in *McCusker*, 448 Pa. at 391: "Here the sole and dispositive issue in controversy at trial was appellant's state of mind at the time of the slaying. . . . Surely the admission of relevant and probative psychiatric evidence would have aided the jury in resolving those conflicting claims."

[4] Because of the vacancies left by Justice COHEN, and Chief Justice BELL (who retired in 1971), Justices NIX and MANDERINO were appointed to the Court. The *McCusker* majority consisted of Justice ROBERTS (who delivered the Opinion of the Court), Chief Justice JONES, and Justices POMEROY, NIX and MANDERINO. A dissenting opinion by Justice EAGEN was joined by Justice O'BRIEN.

the capacity to form an intent to commit a mens rea crime then it cannot be said that society may punish the individual for the proscribed act. The Commonwealth must prove intent as an element of the crime, and the mere act is insufficient to sustain a conviction under these circumstances.

As Justice ROBERTS said in *McCusker*, at 448 Pa. 391-393: "[h]ere the sole and dispositive issue in controversy at trial was appellant's state of mind at the time of the slaying. The Commonwealth's theory was that appellant acted with malice, while appellant sought instead to prove that he acted without malice and in the heat of passion . . . .

"Our courts have admitted psychiatric evidence to determine, under the M'Naghten test, whether defendant was sane at the time of the crime. Thus we receive psychiatric evidence where its potential effect may be to support a finding of insanity—and thus provide a basis for a not guilty verdict. Similarly psychiatric evidence is admitted and indeed virtually controlling when the determination to be made is defendant's mental capacity to stand trial. Finally, such evidence has long been admissible at the penalty stage of the trial.

"Surely the reliance we have consistently placed upon the competence of psychiatric evidence belies any concern that it is not a sufficiently recognized and accepted medical science capable of offering quality expert guidance . . . .

"It would indeed be anomalous to receive psychiatric evidence—as our courts do—to establish the complete defense of insanity but at the same time reject psychiatric evidence which seeks to establish only a partial defense by showing that defendant acted in the heat of passion when he committed the homicide . . . . In many ways the argument for admitting psychiatric evidence to determine whether a defendant acted in the heat of passion . . . resulting in part from mental disor-

ders is entitled to at least the same recognition and consideration as is presently accorded a defense relying on the conditions engendered by drugs and alcohol."

The Commonwealth, in the instant case, argues that *McCusker* should be read restrictively and that it should be applied only to cases involving a question of whether a murder charge may be reduced to voluntary manslaughter. However, in permitting psychiatric evidence as proof of a partial defense (in addition to the *M'Naghten* test), our Supreme Court recognized that it was adopting "two totally separate concepts" to which a number of other jurisdictions have subscribed uniformly throughout their criminal cases.[5]

In reality, diminished responsibility goes to a different issue than does the *M'Naghten* rule. *M'Naghten's* test is not utilized to demonstrate evidence that the defendant lacked the specific intent or malice necessary to convict him of a given offense. It was established to determine the defendant's culpability, based on his capacity to distinguish between "right and wrong". If a defendant meets the *M'Naghten* test, he is acquitted on all charges. Diminished responsibility is a separate concept. It acts as a partial defense, merely reducing the degree of the offense because the defendant is unable to form the specific intent necessary for the greater offense. Jurisdictions which employ both the *M'Naghten* test and the diminished responsibility rule have adequately distinguished them. Illustratively, the Utah Supreme Court, in *State v. Greene,* 6 P. 2d 177 (1931), said: "While an accused is not entirely relieved from responsibility for the commission of a crime on account of insanity unless the insanity be of such a nature and degree that he did not know the nature or quality of his acts, or that he did

---

[5] See, dissenting opinion by Justice COHEN in *Commonwealth v. Ahearn,* supra.

not know that the act was wrong . . . nevertheless a mental disease falling short of any of these effects may, where a particular intent is a necessary element of a higher degree of crime have the effect of reducing the degree of such crime." 6 P. 2d at 186.

It cannot be said that the state of mind of the accused is only relevant in a murder charge. In every offense where mens rea is an element of the crime, the question of whether the perpetrator had sufficient capacity to form an intent to commit the offense is crucial. If competent psychiatric evidence can be produced to negate that capacity, the Commonwealth may not succeed in prosecuting its case. I believe that the reason *McCusker* did not rule on psychiatric testimony to negate specific intent was that the issue was not directly in question under the facts of that case. There is no logical reason why evidence should be admitted to show that the defendant's state of mind negated the specific intent of murder and supplanted by the "heat of passion", but refuse to permit testimony to show that the mind of the defendant was so diseased or defective as to preclude his ability to form the specific intent or malice essential to constitute a given offense. I believe that *McCusker* sounds the "death knell" to the *Ahearn* decisions, and reflects a sound and enlightened view that the admission of psychiatric testimony in some instances, while excluding it in other crucial circumstances, is without reason or logic.[6]

---

[6]It is of interest to note the development and extent of the acceptance of the diminished responsibility test in California. The first case accepting psychiatric testimony where legal insanity could not be established was *People v. Wells*, supra, which permitted such testimony to reduce the charge of murder to voluntary manslaughter. Ten years later, in *People v. Gorshen*, supra, the theory was expended to negate malice. *People v. Castillo*, 449 P. 2d 449 (1969), followed *Gorshen*, and stated that testimony should be admissible to negate crimes of specific intent. The doctrine of dim-

Existence of psychiatric evidence requires the trial court to instruct the jury on either or both the *M'Naghten* test or the doctrine of diminished responsibility. The issue remains a matter for jury deliberation. It is the jury's unassailable function to rule on credibility and the weight which it will accord that testimony. Furthermore, even should the jury determine that the defendant may only be convicted on the lesser offense, our Legislature has provided mental health and rehabilitation measures by which "the Commonwealth, if it decides the interest of society and the individual so require, may move to have the defendant committed to a mental institution—even beyond the sentence limit —so long as he needs treatment." *Commonwealth v. McCusker,* supra at 394; Mental Health and Retardation Act of 1966, Special Sess. No. 3, October 20, P. L. 96, Art. IV, §406, 50 P.S. §4406.

The defendant should be permitted to introduce credible psychiatric evidence which raises either legal insanity or diminished responsibility. While it is true that the Commonwealth enjoys what is termed a "presumption of sanity" in every criminal case, it must be remembered that a presumption is not evidence. If a jury believes that the defendant has offered sufficient evidence to prove "insanity" or his mental inability to form the requisite intent at the time of the crime by a preponderance of the evidence, that presumption vanishes.

In the instant case, the appellant should not have been convicted of assault with the intent to maim and aggravated assault and battery, if the jury were to conclude that at the time of the offense he lacked the capacity to form the specific intent and/or the malice

inished responsibility today is so imbedded in the law of California that the Supreme Court has reversed convictions where the defense has failed to raise the defense in criminal cases. See, e.g., *People v. Welborn,* 257 Cal. 513, 65 Cal. Rptr. 8 (1967).

requisite to commit those offenses.[7]   The firearms convictions require only a general intent, and the issues herein do not affect those convictions whatsoever.   The jury should have been instructed on both the *M'Naghten* standard and on the question of defendant's inability to form a specific intent or malice to commit the two aforementioned crimes on the basis of psychiatric evidence produced at trial.   The jury should be instructed that, if they determine that such intent or malice was lacking due to mental disorder, then they should fur-

---

[7] It must be emphasized here that the Majority Opinion fails to identify the crucial distinction between the *M'Naghten* test and the "diminished responsibility" doctrine. This dissent has attempted to identify that difference, and the increasing number of jurisdictions that have embraced both doctrines as clear and "separate concepts". In affirming the appellant's convictions, and in concluding that the attack on the trial court's instructions to the jury "would add nothing of substance to this appellant's case . . .", the Majority settles upon a false syllogism: "An individual without capacity to understand the nature and quality of his acts is in essence one who cannot intend specific harm. . . ." This may be true. But, the appellant argues, and I must agree, that the opposite is not necessarily true, i.e., that one who does not intend to do specific harm acting under a mental disability, is necessarily devoid of an understanding of the nature and quality of his acts or the ability to know right from wrong (*M'Naghten's* test). The basis for *reduction* of the degree of the offense is a lesser and not a greater standard than the test by which complete acquittal may be obtained. Acknowledging that the charge of aggravated assault and battery requires a showing of malice, the Majority, in my opinion, errs when it states that "[p]roof that appellant's mental condition was such that he was incapable of the state of mind necessary to find malice, i.e., incapable of intending harm or acting wantonly knowing that harm might result, *is equivalent* to proof that he cannot understand the nature and consequences of his acts." The equation does not compute when legal arithmetic is employed. To do so would be to say that every individual who lacks the intent to commit a crime is legally insane. For if such is the conclusion then it would be a miscarriage of justice to hold culpable those individuals charged with crimes of general intent, such as simple assault and battery.

ther be instructed that a conviction may be returned on the lesser offense of simple assault and battery. As defendant offered psychiatric evidence on the question of his sanity, the jury should, in addition, deliberate with the understanding that if it believes by a fair preponderance of the evidence that the defendant was acting under a "diminished capacity", the presumption of sanity vanishes in the face of this contradictory evidence.

The judgments of sentence should be reversed, and the case remanded for a new trial consistent with this opinion.[8]

---

[8] While the weapons convictions, pointing a firearm and violation of the Uniform Firearms Act, are unaffected by this opinion, in substance, a new trial would require a remand for sentencing, as the elimination of the more serious offenses and conviction on the lesser offense would require a reconsideration of all the originally imposed sentences. *Commonwealth v. Lockhart*, 223 Pa. Superior Ct. 60, 296 A. 2d 883 (1972).