Commonwealth v. Ross, Appellant.

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Philip D. Lauer*, Assistant Public Defender, for appellant.

*John E. Gallagher*, First Assistant District Attorney,

and *Charles H. Spaziani*, District Attorney, for Commonwealth, appellee.

Opinion by Van der Voort, J., March 29, 1976:

Appeal is taken from judgment of sentence rendered following jury verdicts of guilt on charges of assault with intent to ravish, rape, aggravated assault and battery, and assault and battery.[1] Motions for new trial and in arrest of judgment were filed and denied.

On the evening of October 28, 1972, two young women, aged 17, were attending a social event on the campus of Lehigh University. Following their departure, and while they were on the steps of a dormitory, they were accosted from the rear by a man later identified by them as appellant. Simultaneously, each was grabbed around the neck, forced to accompany appellant to his car, and driven a short distance to a secluded area. Upon threat of death, each girl was ordered to undress. In the back seat of his auto, appellant forced each girl to submit to an act of intercourse, overcoming their efforts to resist by repeated threats of death, blows with his fist, slaps with his hand, and movements to choke the victims. Following this episode, appellant first threatened to kill one of the girls because he was afraid one or the other would tell the authorities; but he retracted this threat and ordered them to dress. Upon attempting to pull the car onto the road, appellant discovered that it was mired in the mud. With the assistance of one of the girls appellant managed to push the car out of the mud. The girls were delivered back to the campus, the total time of about three and one-half hours having elapsed.

Upon their release, they went to a dormitory to call their parents and the police. At or about 4:40 A.M., they were driven to a hospital, whereupon examination revealed that each girl had multiple bruises about the

---

1. "The Penal Code", Act of 1939, June 24, P.L. 872, 18 P.S. §§4722, 4721, 4708, and 4709 respectively.

face, chest, neck and thigh. Each was emotionally quite upset and near hysteria. One victim's left eye was swollen and bleeding. X-rays proved negative. Gynecological examination was performed: one victim's vagina was covered with blood and clots, and there was a laceration permitting sight through into the rectum; the other victim had a normal-appearing vagina but had a bloody discharge from the rectum near the anal sphincter. Following a cleaning of the affected areas, further examination was withheld because of extreme pain; surgery was required for the victim suffering a lacerated vagina. Testimony from the examining gynecologist was to the effect that no male sperm was identified by way of testing the vagina of the second victim described above; such a thorough examination was not at the time performed upon the former because of the serious laceration and pain. This testimony was offered by the emergency room physician, the gynecologist on duty, and the first victim's private surgeon.

Appellant was apprehended on October 31, 1972, and stood trial beginning February 25, 1974, following on that day denial of his motion to suppress evidence - a photograph which included appellant. Trial resulted in conviction and judgment of sentence, upon which this appeal now rests. Appellant makes numerous arguments; however, because of the disposition hereof, we need only consider his allegation of error as to the charge of the lower court.

Appellant's argument is one of error in the charge to the jury.[2] First appellant contends that the lower court should have accepted his point for binding instruction regarding the failure by the Commonwealth to rebut

---

2. We note that the within issues were preserved for our consideration by appellant's exception to the charge following the lower court's refusal of his suggested pertinent point for charge and inclusion of the issue in post-trial motions.

appellant's insanity claim. The insanity issue was properly placed before the jury by a psychiatrist who had examined appellant, studied his history, and concluded, so testifying, that he was insane on the date of the crimes. It then became the Commonwealth's burden to offer evidence sufficient to prove appellant's sanity beyond a reasonable doubt. The Commonwealth accepted this burden or risk of non-persuasion by direct testimony of a security guard at the scene of the party attended by appellant as well as the victims on the night in question, a bartender at a reception attended by appellant earlier in the evening, and the victims. These witnesses had observed the conduct, words and deeds of the appellant at or very near the happening of the crimes and gave their observations as to his manifested conduct. By way of cross-examination of appellant's wife the Commonwealth presented further testimony of his observed conduct on the day in question. It is proper for the Commonwealth to present lay witnesses in rebuttal. *Commonwealth v. Zlatovich*, 440 Pa. 388, 269 A.2d 469 (1970). Thus was before the jury, for its ultimate fact-finding, testimony by which it could determine whether appellant knew the nature and quality of his acts or whether he did not know that they were wrong, when he allegedly committed them. *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974) is in accord that this is proper procedure. It is not the function of an appellate court to sit as a fact-finder. We can and have examined the testimony of the lay witnesses to see if it goes to the issue of sanity, and to see if such was sufficiently close in time to the occurrence so that it is relevant to the subject's state of mind. Our function thus is one of passing upon the sufficiency of the evidence. Here the witnesses observed appellant's actions on the day of the crime and, except for the victims, were presumed to be disinterested in his actions. Moreover, the victims, while brutalized, remembered and testified to appellant's clarity of conversation and willingness to drive them

back to a spot near where he had accosted them. This we hold to be testimony going to sanity and to be sufficient in degree and relevance such that it was proper to go to the jury for fact-finding, and that the lower court did not err in charging the jury to consider this testimony.

Further, appellant alleges error in the charge in that the law was incorrectly stated. The charge in pertinent part was as follows:

> "The defendant has entered the defense that he was insane at the time the alleged offense was committed.
> . . .
> "In' deciding whether the defendant has met his burden of proving insanity by a fair preponderance of · the evidence, you should consider all of the evidence offered by both sides as to his actions and conduct.
> . . .
> "But, you must make that decision: that is, whether the defendant has convinced you by a preponderance of the evidence that at the time of the alleged deeds, commission of the deeds, the defendant was in an acute psychotic state so as to be, at that time, incapable of knowing what he was doing, and if he did know what he was doing, he was incapable of judging that it was wrong to do so."

This statement of the law was correct at the time the judge gave it and was in line with *Commonwealth v. Zlatovich, supra,* 440 Pa. 338 (1970) reaffirmed in *Commonwealth v. Simms,* 228 Pa. Superior Ct. 85, 324 A.2d 365 (1974). However, *Simms,* which was tried on October 24, 1972, was reversed by the Supreme Court of Pennsylvania on February 11, 1975, based on the principles of law enunciated in *Commonwealth v. Demmitt,* which was decided June 21, 1974, (*supra,* 456 Pa. 475) and *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880, decided July 1, 1974. *Demmitt* and *Rose* having been decided after *Simms* leave no question as to their retroactive application. In *Simms,* Chief Justice JONES

dissented particularly to the retroactive effect given to the new rule. The retroactive application of *Demmitt* and *Rose* is inescapable notwithstanding the startling impact of it as illustrated in the instant case. This being so, it becomes error for the lower court to have charged that the defendant has the burden of proving his insanity by a preponderance of the evidence. When by sufficient evidence he places his sanity in issue, the burden of proving sanity beyond a reasonable doubt resides with the Commonwealth.

We are therefore constrained to find error in the charge, and we reverse the judgment of sentence and remand the case for a new trial.