410 A.2d 880

**COMMONWEALTH of Pennsylvania**

v.

**Roy WILLIAMS, Appellant.**

Superior Court of Pennsylvania.

Argued July 16, 1979.

Filed Sept. 21, 1979.

Petition for Allowance of Appeal Denied March 12, 1980.

28

32

Thomas A. Wallitsch, Public Defender, Allentown, for appellant.

Henry S. Perkin, Assistant District Attorney, Allentown, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

O'BRIEN, Judge:

On April 26, 1972, appellant, Roy Williams, was convicted of murder of the first degree by a jury which thereafter set his sentence at life imprisonment. Following denial of his post-verdict motions, appellant appealed to the Supreme Court of Pennsylvania, who reversed the judgment of sentence and ordered a new trial. *Commonwealth v. Williams*, 463 Pa. 370, 344 A.2d 877 (1975).[1]

A second trial was held and, on March 2, 1976, appellant was again convicted by a jury of murder of the first degree. Post-verdict motions were denied and, on March 30, 1978, appellant was sentenced to life imprisonment. This appeal followed.

* Justice HENRY X. O'BRIEN of the Supreme Court of Pennsylvania, and Judge ROBERT W. HONEYMAN of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

1. For the factual history of the instant homicide, see the opinion of the Supreme Court in *Williams, id.*

■ Appellant's first assignment of error charges that the court below erred in refusing his request to act as co-counsel with his attorneys. It is clear that an accused in a state criminal trial has a constitutional right to represent himself if he voluntarily and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1976); *Commonwealth v. Davis*, 479 Pa. 274, 388 A.2d 324 (1978).

There is, however, a distinction between the constitutional right to proceed *pro se* pursuant to a valid waiver of the right to counsel and a right to proceed *pro se* and with counsel. While we have unearthed no Pennsylvania cases disposing of this precise issue, numerous other courts have considered the question in the wake of *Faretta, supra.* Those courts have held with near unanimity that a criminal defendant has no sixth or fourteenth amendment right to act as co-counsel where he is already represented by an attorney and that a decision to permit such "hybrid" representation is better left to the the sound discretion of the trial court.[2] We find no persuasive reason to hold otherwise.

Appellant would also have us construe Article I, section 9 of the Constitution of Pennsylvania as positing a right for one criminally accused to act as co-counsel in his defense.[3] The construction which appellant urges upon us was rejected by this court in *Commonwealth v. Ferenc*, 92 Mont.L.R. 176 (1970), aff'd. mem., 216 Pa.Super. 782, 261 A.2d 117 (1970).[4]

**2.** See, e. g., *United States v. Olson*, 576 F.2d 1267 (8th Cir. 1978); *United States v. Williams*, 534 F.2d 119 (8th Cir. 1976), cert. den. 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Hill*, 526 F.2d 1019 (10th Cir. 1975), cert. den. 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182 (1976); *State v. McCleary*, 149 N.J.Super. 77, 373 A.2d 400 (1977); *Callahan v. State*, 30 Md.App. 628, 354 A.2d 191 (1976).

**3.** The pertinent section provides, in part:
"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel . . ."

**4.** In accord are other courts construing similar state constitutional provisions: *Landers v. State*, 550 S.W. 272 (Tex.Cr.App.1977); *Heard v. State*, 126 Ga.App. 62, 189 S.E.2d 895 (1972); *Thompson v. State*, 194 So.2d 649 (Fla.App.1967); *State v. Thomlinson*, 78 S.D. 235, 100 N.W.2d 121 (1960).

■ We consequently conclude there is no right, deriving from either the United States Constitution or Constitution of Pennsylvania, for a criminal defendant to proceed as co-counsel in his own defense.

■ Appellant next contends the court below erred in permitting the Commonwealth to introduce evidence of two prior violent assaults by appellant upon the victim, his wife. Both incidents occurred within six months of the murder of which appellant was convicted. It is well established that evidence of prior threats and offenses involving an accused and decedent may be admissible to show malice, motive or intent, provided such previous incidents are related to the offense for which the accused is on trial. *Commonwealth v. Glover*, 446 Pa. 492, 286 A.2d 349 (1972). This may be especially so where the crime is one between husband and wife and the nature and quality of the spousal relationship is at issue. *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977). In *Ulatoski, id.,* our Supreme Court held the trial court did not err in admitting evidence of the accused's physical abuse of his wife, incidents which occurred between nine and seventeen months prior to her death. Instantly the occurrences were more proximate in time to the killing than were the episodes in *Ulatoski* and are no less related to the crime with which the accused was charged. No error is perceived in admitting evidence concerning them.

Next assigned as error is a ruling of the trial court admitting into evidence a statement made by appellant to Dr. Robert M. Sacks while the latter was ministering to appellant in the hospital following his arrest. When appellant was apprehended by police he was taken to the emergency room of Easton Hospital for treatment of a leg wound. Dr. Sacks testified that fearing the wound might have been harboring a bullet or other foreign object, he inquired as to its cause. When appellant did not answer, Dr. Sacks indicated he would have to probe the wound to determine whether a foreign object was present. Appellant then responded that the wound was "from a knife."

Appellant contends that Dr. Sacks was acting as an agent of the police when he questioned him concerning the cause of the wound, and that as such in the absence of constitutional warnings, the rule in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) requires the exclusion of any statements made by appellant during his treatment.

While Dr. Sacks did testify the police had asked him to "find out what happened," he nevertheless repeatedly testified he did not act on the promptings of the police, but asked appellant only those questions necessary to properly treat his wound. We accordingly find no merit in appellant's assertion that Dr. Sacks was acting as an agent of the police and hold that the statement was properly admitted.

Appellant argues the court below erred in admitting evidence of his statements and conduct in the presence of police and correctional officers several hours after the stabbing, evidence which was offered to prove appellant's sanity. Appellant's assignment of error is two-fold: first, that such evidence is irrelevant to the issue of sanity; and second, that even if relevant, the evidence was insufficient to meet the Commonwealth's burden of proving sanity beyond a reasonable doubt.

The first of appellant's contentions is clearly without merit. It is well-settled in Pennsylvania that lay witnesses may properly give evidence to establish the sanity of an accused who has offered expert testimony as to his insanity. *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974); *Commonwealth v. Ross,* 239 Pa.Super. 94, 361 A.2d 685 (1976).

Of more moment is appellant's second assertion that the evidence was insufficient to prove beyond a reasonable doubt that appellant was sane.

We begin by observing that the trial court clearly and accurately presented the issue of sanity to the jury for its resolution. The court's charge to the jury on the issue of sanity included the following:

"In view of what I have said regarding the legal test of insanity and the Commonwealth's burden of proof, you cannot find the Defendant guilty unless you are satisfied beyond a reasonable doubt that at the time of the killing either the Defendant has no mental disease or defect or if he did have a mental disease or defect that he was not, as a result of such disease or defect, incapable of knowing what he was doing or of judging that it was wrong to do what he did."

And later:

"If there was reasonable doubt in your mind as to whether he was able to comprehend that killing, that killing another person was wrong and punishable by law, then your verdict in the case would be not guilty because of insanity."

The jury returned and asked for additional instructions concerning the "definition of legal insanity." As part of its lengthy reinstruction on sanity, the court charged:

"When the defense of insanity is raised by the evidence, the Commonwealth has the burden of proving beyond a reasonable doubt that the Defendant was not insane at the time of the alleged crime."

Having noted that the jury was properly apprised of the allocation of the burden of proof on the issue of insanity, we turn to the evidence adduced at trial. The Commonwealth sought to establish appellant's sanity through the testimony of three lay witnesses: a correctional officer at Lehigh County Prison, and two police detectives. The testimony of all three was to the effect that following his arrest several hours after the killing, appellant was alert, responsive and coherent in answering questions concerning his physical condition and personal background. All three witnesses testified appellant's condition remained unchanged during the period they observed him.

In *Commonwealth v. Ross, supra,* we found the evidence presented by the Commonwealth's lay witnesses was sufficient to sustain a finding of sanity beyond a reasonable doubt where the only evidence of sanity was the testimony

of a security guard who had been present at a party attended by appellant on the night of the crime, a bartender at a reception attended by appellant earlier that evening, and the victims. These witnesses had observed appellant at or near the time the crimes were committed and testified concerning his manifest conduct.

Similarly in *Commonwealth v. Donofrio,* 247 Pa.Super. 345, 372 A.2d 859 (1977), the Commonwealth countered expert testimony with that of lay witnesses to establish sanity. The victim testified the appellant appeared "normal" at the time the crime was committed. Police officers testified that following his arrest appellant appeared "normal, though nervous;" that he was coherent and responsive in answering questions. We held the Commonwealth's evidence was sufficient to prove sanity beyond a reasonable doubt. Of similar import are *Demmitt, supra; Ross, supra.*

■ Accordingly, we hold that the Commonwealth's use of lay witnesses to establish appellant's sanity was proper, and that the jury was warranted, on the basis of that evidence, in finding appellant was sane at the time he committed the crime for which he was convicted.

Next appellant alleges the district attorney engaged in prosecutorial misconduct in cross-examining appellant in that he asked questions with regard to facts he did not subsequently support with evidence. Specifically, appellant submits it was improper for the prosecutor to attempt to discredit appellant's testimony on direct examination that he was in love with his wife, by inquiring on cross-examination as to his relationship with another woman, where the prosecutor failed to subsequently show the existence of such a relationship.

■ The scope of cross-examination in a criminal case is one of great latitude. *Commonwealth v. Lopinson,* 427 Pa. 284, 234 A.2d 552 (1967). It is, however, also true, as appellant argues, that "[i]t is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner cannot support by evidence." A.B.A.

Standards, The Prosecution Function, § 5.7(d) (Approved Draft, 1971).

Nevertheless, we do not believe this standard in fact imposes upon counsel the affirmative obligation to offer evidence in support of every fact he infers for purposes of cross-examination; rather, it establishes a standard of conduct, restraining an examiner from implying a fact he knows he could not support with evidence.

 Appellant does not argue, nor could he, that the line of questioning pursued by the prosecutor on cross-examination was not, on its face, proper. Appellant had testified that he loved his wife so deeply that he was enraged, even unto insanity, by the sight of her in the arms of another man. Clearly such testimony exposed appellant to cross-examination designed to contradict his assertion that he loved his wife and demonstrate that the nature of his marital relationship was otherwise. *Commonwealth v. Ulatoski, supra; Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974). The prosecutor sought to achieve this objective by questioning appellant concerning his relationship with another woman. Essentially, then, appellant's argument is that the prosecutor's cross-examination was impermissible because he could not and did not prove by independent evidence the existence of the improper extra-marital relationship his questioning presumed. It is true the prosecutor did not do so, but we consider he was under no such obligation. It is also true the prosecutor's questions were answered in the negative by appellant, but the propriety of impeachment cross-examination cannot depend upon whether the witness being impeached affirms or denies; such a result would be absurd. As to whether or not the prosecutor could have supported his presumption had he elected or been required to do so, we are, perforce, limited to a scrutiny of the cross-examination complained of.

Therein, the record reveals appellant admitted he did know, and was "friendly" with the woman being inquired of; appellant admitted they corresponded yet refused to divulge the nature of that correspondence as being "personal." We

find that the record thus supports a conclusion that there was a factual basis for the prosecutor's cross-examination. It appearing so of record, we hold that appellant's contention is without merit.

Appellant next asserts it was reversible error for the trial court to permit cross-examination of appellant concerning a fight between him and his wife two years prior to the killing, which resulted in the hospitalization of the wife. Testimony regarding the spousal relationship between a defendant and decedent is, like any other evidence, subject to the general evidentiary rules governing competency and relevancy. *Commonwealth v. Glover, supra.*

As our Supreme Court noted in *Commonwealth v. Ulatoski, supra,* 472 Pa. at 63–64, 371 A.2d at 191–192:

> "Accordingly, the testimony may involve events so remote from the date of the crime that it has no probative value. However, no rigid rule can be formulated for determining when such evidence is no longer relevant. As Professor Wigmore states: 'What that limit of time should be must depend largely on the circumstances of each case, and ought always to be left to the discretion of the trial court.' The trial court's determination will not be disturbed absent an abuse of discretion." (footnotes omitted.)

Moreover, "proof that conflict continued from the time described in the testimony until shortly before a homicide is a factor to be considered when determining the admissibility of evidence of a prior occurrence which is arguably too remote." *Id.* n. 12.

Instantly the event testified to occurred approximately two years prior to the killing. There was additional testimony concerning similar incidents six months and two months before the crime. On these facts, we hold the trial court did not abuse its discretion in permitting the cross-examination.

Appellant further assigns as error a ruling by the court below excluding the testimony of a witness offered by the defense. Appellant proposed to call Attorney Donald Lip-

son, who had represented him in charges arising out of the assault upon the victim six months prior to her murder. Attorney Lipson was offered to testify that the victim had indicated a desire to have the charges against appellant dropped. Those charges were, in fact, ultimately nolle prossed. The proposed testimony of Attorney Lipson was excluded as irrelevant.

Evidence is relevant which tends in some degree to advance the inquiry. *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972). Instantly it does not appear from appellant's offer of proof at trial that his proposed witness would have been able to testify as to why the victim desired the charges against her husband dropped, or why they were ultimately nolle prossed. Since any number of reasons could have contributed, Attorney Lipson's testimony would not have tended to establish any material fact or make a material fact more or less probable. *Commonwealth v. Davenport,* 462 Pa. 543, 342 A.2d 67 (1975). As such, the evidence was properly excluded.

Appellant next contends the court below erred in admitting the testimony of Mrs. Frances Hallman, mother of the victim. Mrs. Hallman testified, over objection, that on June 18, 1971, the day prior to the killing, the victim informed her that she had made an appointment with an attorney to commence divorce proceedings against appellant. Appellant characterizes the testimony as hearsay not admissible under any exception.

Appellant concedes the existence of a recognized exception to the rule barring admission of hearsay testimony for those out-of-court declarations which are offered to prove the declarant's state of mind. *Commonwealth v. Riggins,* 478 Pa. 222, 386 A.2d 520 (1978). Appellant nevertheless argues the statement instantly at issue does not fall within the ambit of the state of mind exception in that it refers to a past event, i. e., that declarant "*had* made an appointment with a lawyer."

Appellant's assertion is without merit. Although part of the out-of-court declaration did indeed refer to a past event, the import of the statement as a whole was that declarant intended to institute divorce proceedings against appellant—classically a state of mind declaration admissible under the exception. *Commonwealth v. Thomas,* 410 Pa. 160, 189 A.2d 255 (1963), cert. den., 375 U.S. 856, 84 S.Ct. 118, 11 L.Ed.2d 83 (1963); see also *Commonwealth v. Ilgenfritz,* 466 Pa. 345, 353 A.2d 387 (1976).

Appellant next argues the trial court erred in permitting the Commonwealth to have admitted into evidence a knife, not positively identified as the murder weapon, and further in permitting a Commonwealth witness to characterize a stain, discovered nearby the knife, as appearing to him to be blood.

It is, however, well settled that a weapon may be introduced into evidence notwithstanding the fact that it cannot be positively identified as the weapon used in commission of the crime. "The fact that the knife could not be positively identified affects the weight of such evidence, but not its admissibility." *Commonwealth v. Ford,* 451 Pa. 81, 301 A.2d 856 (1973). It is sufficient if a proper foundation for admission of the evidence has been laid. *Id.,* 451 Pa. at 84, 301 A.2d at 857.

Instantly three witnesses testified the knife resembled that used by appellant to commit the crime: the knife admitted into evidence had, as did the knife used in the murder, three gold "notches," was similar in curvature and length, and was rusted. In these circumstances the knife was properly admitted. *Commonwealth v. Martin,* 479 Pa. 63, 387 A.2d 835 (1978); *Commonwealth v. Royster,* 472 Pa. 581, 372 A.2d 1194 (1977).

Appellant's second assertion is equally devoid of merit. A lay witness is competent to testify that a stain or stains appeared to him to be blood. *McClain v. Commonwealth,* 99 Pa. 86 (1881).

■ Appellant argues the trial court erred in permitting the testimony of two police officers regarding an assault committed by appellant upon decedent six months prior to the instant murder. Appellant's sole basis for his assertion is a contention that the police lacked probable cause to enter appellant's apartment where they witnessed the assault to which they subsequently testified.

Leaving aside the question of whether the facts instantly presented trigger the operation of the exclusionary rule at all, we nevertheless have examined the record and determine the police did possess probable cause to enter appellant's apartment.

The record reveals the police responded to a complaint that a domestic disturbance was in progress, entered the building in which appellant lived, and arrived at the door of appellant's second floor apartment. The policemen heard screams from inside the apartment. The record of the suppression hearing indicates that the officers heard a male voice say: "I'm going to kill you." The officers knocked and identified themselves. They heard a male voice say: "You called the police, I'm going to kill you." The screams continued. Whereupon the policemen opened the unlocked door and entered the apartment. From the above we conclude the police did not violate appellant's fourth amendment rights, and their testimony was properly admitted.

Appellant further assigns as error the denial by the court below of his motion for change of venue. Particularly appellant relies upon the provisions of 19 P.S. § 551, which states, in part:

"In criminal prosecutions the venue may be changed on application of the defendant or defendants, in the following cases: . . . Fourth: When, upon second trial of any felonious homicide, the evidence in the former trial shall have been published within the county in which the same is being tried and the regular panel of jurors shall be exhausted without obtaining a jury."

Thirteen jurors were selected prior to exhaustion of the first panel of veniremen. Appellant urges a change of venue should have been granted at that time.

The statutory provision upon which appellant relies has long been held not to impose a mandate, but rather to vest discretion in the trial court. *Commonwealth v. Yount,* 455 Pa. 303, 314 A.2d 242 (1974); *Commonwealth v. Karmendi,* 328 Pa. 321, 195 A.2d 62 (1937). This is to say no more than has often been said: the disposition of an application for change of venue is within the sound discretion of the trial court. *Commonwealth v. Frazier,* 471 Pa. 120, 369 A.2d 1224 (1977).

In the instant case, the occurrence which appellant asserts acts to call the statute into operation was the exhaustion of the first panel of veniremen. Appellant had, then, proceeded to voir dire. Our Supreme Court has held that once an accused proceeds to voir dire, the scope of analysis for change of venue purposes narrows. "Once a defendant has proceeded to voir dire examination of potential jurors, . . . [he] . . . may have venue changed only if he can show actual prejudice in the empanelling of the jury." *Commonwealth v. Rolison,* 473 Pa. 261, 374 A.2d 509 (1977).

The record in the instant case does not support a claim of actual prejudice, nor did appellant make such a claim during voir dire. The record of the voir dire indicates that approximately twenty-three (23) of the panel of one hundred twenty (120) veniremen had heard or read something of the case. Appellant does not now contest as error denial of any challenge for cause based upon exposure of a prospective juror to prejudicial pretrial publicity. No actual prejudice in the empanelling of the jury having been claimed or shown, we conclude the court below properly denied appellant's application for change of venue.

Appellant next argues the court below erred in denying a defense motion for sequestration of the jury. The motion was originally made and denied on February 24, 1976, the

first day of trial. The trial court admonished the jury that in the event the trial did become the subject of news coverage, they were not to permit themselves to be exposed to it. On the next day, February 25, the court, having been apprised of the fact that the evening newspaper for that date contained an article in which reference was made to appellant's previous trial, reversed its earlier ruling and ordered sequestration of the jury.

■ The decision whether to order sequestration is within the sound discretion of the trial court. *Commonwealth v. Bruno,* 466 Pa. 245, 352 A.2d 40 (1976). Where, as here, there is no showing of potential prejudice to appellant at the time the motion is made, denial of the motion will not constitute an abuse of that discretion. *Commonwealth v. Gooslin,* 439 Pa. 170, 266 A.2d 655 (1970).

The fortuity that, after the fact of denial of appellant's motion, publicity concerning the trial was disseminated, does not, without more, render the court's ruling erroneous. This is all the more so in light of the fact that the offending article appeared in an evening newspaper which was not circulated until the jurors were present in the courtroom and the sequestration order had been entered.

■ The decision of the court below to reverse its ruling and order sequestration rather than rely on its admonition to the jury was a salutary exercise of judicial discretion. In these circumstances we find no abuse of that discretion in the court's original ruling.

Finally, appellant argues the trial court erred in improperly restricting the testimony of an expert witness. A psychologist called by the defense testified concerning tests she had administered to appellant six (6) months prior to his arrest, and the result thereof. The court, however, refused to permit the witness to testify as to her opinion regarding whether, at the time of the killing, appellant understood the nature and quality of his acts and knew whether they were right or wrong. Appellant assigns this ruling as error.

Our review of the record reveals that a psychiatrist, Dr. Stephen Barrett, was called by the defense and was permitted to testify concerning his opinion on the ultimate M'Naghten question: did appellant understand the nature and quality of his acts at the time of the crime, and did he know whether they were right or wrong. A psychologist, Mrs. Terry Karnan, also called by the defense, was permitted to testify concerning tests she administered to appellant and the results thereof. She testified appellant was a paranoid type personality, that he suffered from feelings of inadequacy, that he was delusional in that he felt the whole world was against him, that he had impaired intellectual ability in abstract reasoning and motor-visual coordination, and that appellant would experience periods of irrationality during which he would not know what he was doing. The trial court did not, however, permit Mrs. Karnan to testify as to her opinion of whether appellant knew the nature and quality of his actions when he killed his wife.

The determination of whether an expert is competent and qualified to testify is within the sound discretion of the trial court. *Adams v. Onopink,* 437 Pa. 412, 263 A.2d 881 (1970); *Laubach v. Haiger,* 433 Pa. 487, 252 A.2d 682 (1969). In the instant case the trial court conducted a lengthy colloquy outside the hearing of the jury and found Mrs. Karnan's experience with criminally accused patients was minimal. The witness had received her Master's Degree in clinical psychology seven months prior to her interviews with appellant. She had never testified in a criminal case. She was not licensed as a clinical psychologist. On the record of the instant case, the trial court did not abuse its discretion in permitting Mrs. Karnan to testify concerning her testing of appellant, yet limiting the inquiry short of an opinion the court found her unqualified to make. This is especially so in light of the fact that one expert witness, Dr. Stephen Barrett, had been permitted to testify concerning his opinion on the issue of appellant's sanity, and Mrs. Karnan had been permitted to testify at length concerning the results of her testing of appellant and her observations

relating to his mental condition. The defense position on the insanity questions was thus fairly before the trier of fact.

Judgment of sentence affirmed.