## Commonwealth v. Derby

*Thomas H. Kelley, assistant district attorney,* for the Commonwealth.

*Allen H. Smith,* for defendant.

CASSIMATIS, *J.,* August 29, 1994—On November 1, 1993, a criminal complaint was filed against the defendant, Frances Theresa Derby, charging the defen-

dant with criminal homicide, 18 Pa.C.S. §2501[1] and murder, 18 Pa.C.S. §2502.[2] Informations were filed on the same date, charging the defendant with criminal homicide and murder, and in addition, charged the defendant with voluntary manslaughter[3] and involuntary manslaughter.[4]

---

1. Section 2501. Criminal homicide

"(a) Offense defined.—A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.

"(b) Classification.—Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter." 1972, Dec. 6, P.L. 1482, no. 334, §1, effective June 6, 1973.

2. Section 2502. Murder.

"(a) Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing....

"(c) Murder of the third degree.—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree...." 1972, Dec. 6, P.L. 1482, no. 334, §1, effective June 6, 1973. As amended 1974, March 26, P.L. 213, no. 46, §4, imd. effective; 1978, April 28, P.L. 84, no. 39, §1, effective in 60 days.

3. 18 Pa.C.S. §2503. Voluntary Manslaughter

"(a) General rule.—A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

"(1) the individual killed; or

"(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

"(b) Unreasonable belief killing justifiable.—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

The preliminary hearing was held on Friday, November 19, 1993 before District Justice Vera Mulherin and the defendant was arraigned on December 17, 1993. Requests for pre-trial discovery were made by the defendant as well as the Commonwealth.

On March 7, 1994, an application for court determination of defendant's competency was filed pursuant to 50 P.S. §7402 and 50 P.S. §7403 and an order, signed the same day, directed that an examination by Dr. Steven J. Karp, D.O. take place on March 17, 1994 to determine the defendant's mental condition.

An informal meeting of counsel and the court was held on August 8,1994, at which time it was determined that a pre-trial conference pursuant to Pennsylvania Rules of Criminal Procedure should be held and was scheduled for August 11, 1994. Defense counsel indicated on August 8, 1994 that notices of mental infirmity defense[5] and battered wife syndrome defense

---

"(c) Grading.—Voluntary manslaughter is a felony of the second degree." 1972, Dec. 6, P.L. 1482 no. 334, §1, effective June 6, 1973.

4. 18 Pa.C.S. §2504. Involuntary Manslaughter

"(a) General rule.—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

"(b) Grading.—Involuntary manslaughter is a misdemeanor of the first degree." 1972, Dec. 6, P.L. 1482, no. 334, §1, effective June 6, 1973.

5. The notice of mental infirmity defense was filed by the defendant on August 8, 1994 and provides in part:

"(1) The defendant has a prior history of mental illness, including treatment at the Johns Hopkins Phippa Clinic, York Hospital in 1966 for emotional instability, 1968 for psychoneurosis and suicidal ideation, 1969 for manic depression and suicidal ideation, 1985 for depression and in early 1984 for mental instability, depression and suicidal ideation.

would be filed by the defendant and this was noted of record at the pre-trial conference.

At the pre-trial conference, Assistant District Attorney Kelley presented evidence which he intends to offer at the trial of this matter, to which defense counsel objected and made an oral motion in limine to preclude the Commonwealth from introduction of the intended evidence.

"It is well-settled law that *[t]he trial court has 'broad discretion as to the manner in which a trial is to be conducted, particularly with regard to the admission or exclusion of evidence.' Commonwealth v. Lumpkins,* 324 Pa. Super. 8,14, 471 A.2d 96, 99 (1984). Relevancy is, ..., a basic requirement for the admissibility of any evidence in a criminal trial. *Id. Commonwealth v. Conway,* 368 Pa. Super. 488, 493-95, 534 A.2d 541, 544 (1987), *alloc. denied* in 520 Pa. 581, 549 A.2d 914. (emphasis added) Evidence is relevant when 'the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence renders the desired inference more probable than it would be without the evidence[.]' *Commonwealth v. Haight,* 514 Pa. 438, 440, 525 A.2d 1199, 1200 (1987), citing *Commonwealth v. Stewart,* 461 Pa. 274, 278, 336 A.2d 282, 284 (1975). (citations omitted in original) However, not all relevant evidence is admissible, and a trial court may exercise its discretion to exclude relevant evidence that 'may confuse, mislead or prejudice

"(2) Counsel for the defendant alleges and avers that the defendant has a psychotic depression known as involutional melancholia and an Asthenic personality disorder....

"(4) The complete extent of defendant's mental infirmity and the totality of diagnosis is unknown at the present time, but will be provided to the Commonwealth upon a full and complete psychiatric evaluation of the defendant pursuant to Rules of Criminal Procedure."

the jury,' *Id.* 324 Pa. Super. at 15, 471 A.2d at 100. (citations omitted) Of course, most of the evidence offered by the prosecution in a criminal case will prejudice the defendant. *Commonwealth v. Dollman,* 355 Pa. Super. 108, 114, 512 A.2d 1234, 1237 (1986). (citations omitted) *The inquiry therefore is whether the evidence is so prejudicial that it 'may inflame' the jury to make a decision based upon 'something other than the legal propositions relevant to the case.' Commonwealth v. Shain,* 324 Pa. Super. 456, 464, 471 A.2d 1246, 1249 (1984); (citation omitted) A piece of evidence is of essential evidentiary value if the need for it clearly outweighs the likelihood of it inflaming the minds and passions of the jurors. (citation omitted) Because rulings on the admission of evidence rest within the sound discretion of the trial court, we will not reverse the trial court's decision absent a manifest abuse of discretion. *Commonwealth v. Lumpkins, supra* at 15, 471 A.2d at 100. *Commonwealth v. Conway, supra. " Commonwealth of Pennsylvania v. Enders,* 407 Pa. Super. 201, 207-208, 595 A.2d 600, 603-604 (1991). (emphasis in original)

## I. EVIDENCE OF THREATS TO SHOW ILL WILL, MOTIVE OR MALICE

The Commonwealth seeks to have admitted several statements made by the defendant during the year preceding the homicide, to the effect that she wished that the victim were dead. The Commonwealth seeks to have the statements admitted as previous relations to show ill will, motive or malice.

The Commonwealth directs the court to the case of *Commonwealth of Pennsylvania v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977), in which the defendant was convicted of third-degree murder in connection with

the shooting death of his wife. The Pennsylvania Supreme Court held that testimony of marital discord in the defendant's household was relevant and admissible to the determination of whether the shooting was accidental or intentional. See *Commonwealth of Pennsylvania v. Albrecht,* 510 Pa. 603, 511 A.2d 764 (1986), *cert. denied,* 480 U.S. 951, 94 L.Ed.2d 801, 107 S.Ct. 1617 (1987); *Commonwealth of Pennsylvania v. Groff,* 356 Pa. Super. 477, 514 A.2d 1382 (1986), *alloc. denied,* 515 Pa. 619, 530 A.2d 428 (1987).

"On many occasions, this court stated that evidence concerning the previous relations between a defendant and a homicide victim is relevant and admissible for the purpose of proving ill will, motive or malice. (footnote omitted) Evidence of prior occurrences in which the accused threatened, assaulted, or quarrelled with the decedent may be admissible for this purpose. (footnote omitted) This principle applies when the decedent was the spouse of the accused. (footnote omitted) Thus, evidence concerning the nature of the marital relationship is admissible for the purpose of proving ill will, motive or malice. (footnote omitted) This includes, in particular, evidence that the accused physically abused his or her spouse. (footnote omitted)" *Commonwealth of Pennsylvania v. Ulatoski, supra* at 60-61, 371 A.2d at 190.

"This may be especially so where the crime is one between husband and wife and the nature and quality of the spousal relationship is at issue. *Commonwealth v. Ulatoski,* 472 Pa. 53, 371 A.2d 186 (1977)." *Commonwealth of Pennsylvania v. Williams,* 270 Pa. Super. 27, 35, 410 A.2d 880, 883 (1979).

"To no extent, however, did *Ulatoski* indicate that evidence relevant to the marital relationship was exempt from compliance with established rules governing its

admission. Indeed, the express language of the decision was to the contrary: 'Testimony concerning the marital relationship between a defendant and decedent, like any other evidence, *is subject to the general evidentiary rules governing competency and relevancy.'* (emphasis added; footnote omitted) 472 Pa. at 63, 371 A.2d at 191. Hence, *Ulatoski* did not create an exception to the hearsay rule; nor did it contemplate that testimony regarding marital relationships in cases such as this would be subject to a relaxed standard of admissibility." *Commonwealth of Pennsylvania v. Myers,* 530 Pa. 396, 401, 609 A.2d 162, 164-165 (1992).

Accordingly, the testimony may involve events so remote from the date of the crime it has no probative value. In the *Ulatoski* case, the events occurred between nine and 17 months before the shooting. "However, no rigid rule can be formulated for determining when such evidence is no longer relevant. As Professor Wigmore states: 'What that limit of time should be must depend largely on the circumstances of each case, and ought always to be left to the discretion of the trial court.' " (footnote omitted) *Id.* at 63, 371 A.2d at 191-192.[6] In the instant matter, the alleged threats made

---

6. In the case of *Commonwealth of Pennsylvania v. Glass,* 486 Pa. 334, 405 A.2d 1236 (1979), the defendant contended that the trial court committed reversible error by permitting testimony concerning alleged prior acts of violence committed by the defendant some 10 months before the murder took place. The Supreme Court stated that the fact these violent episodes occurred some time before the murder in question affects their weight as evidence, but not their admissibility. Citing to *Ulatoski, supra,* the Supreme Court reasoned: "Although evidence of [prior occurrences] which is too remote is not properly admissible ... it is generally true that remoteness of the prior instances of hostility and strained relations affects the weight of that evidence and not its admissibility." *Commonwealth of Pennsylvania v. Glass, supra* at 343, 405 A.2d at 1240. (citations omitted)

by the defendant occurred within 12 months preceding the homicide and we do not find these threats too remote to the date of the crime.

In the case of *Commonwealth of Pennsylvania v. Mikesell,* 371 Pa. Super. 209, 537 A.2d 1372 (1988), *appeal denied,* 520 Pa. 587, 551 A.2d 214 (1988), the defendant was convicted of two counts of first-degree murder in the death of his estranged wife and her companion. On appeal, the defendant alleged numerous trial errors, the fourth issue being whether the court erred in permitting hearsay testimony from a Commonwealth witness, the victim's mother. The witness testified about her daughter's relationship with the defendant at the time of the killings, testifying as follows:

"Well, she said that he told her, while they were separated, until they get the divorce, he better never catch her with anybody else, that you better look over your shoulder if he ever catches her with anybody else, you know, that it would be too bad for her." *Id.* at 219, 537 A.2d at 1377.

Defendant argued that the statement was inadmissible hearsay. However, the Superior Court determined that the testimony was probative of the defendant's ill will, motive, or malice towards his wife and was therefore admissible as an exception to the hearsay rule. See *Commonwealth of Pennsylvania v. Gibson,* 363 Pa. Super. 466, 468-69, 526 A.2d 438, 440 (1987).

In the instant matter, the defendant allegedly made certain statements during the year preceding the homicide which referred to the victim. Based upon the above discussion, we will allow the admission of certain statements made by the defendant that she wished that the victim were dead.

## II. PHOTOGRAPHIC EVIDENCE TO SHOW ILL WILL, MOTIVE OR MALICE

The Commonwealth seeks to have admitted a photograph of a doorstopper used by the victim when he was sleeping out of fear of the defendant. It was stated at the pre-trial conference by the Commonwealth that the daughters of the victim and the defendant will testify that the reason the victim had the doorstopper installed within the house was because he was afraid of the defendant. The significance of the photograph of the doorstopper depends entirely on the testimony of the daughters. See *Heimbach v. Peltz,* 384 Pa. 308, 121 A.2d 114 (1956).

"In *Commonwealth v. Scaramuzzino, supra,* the Supreme Court reiterated the standard by which such materials are evaluated: The proper test to be applied by the trial court in determining the admissibility of photographs in homicide cases is whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Commonwealth v. Powell,* 428 Pa. 275, 278-279, 241 A.2d 119, 121 (1968). Such photographs will not be excluded merely because they are horrid or gruesome. *Commonwealth v. Snyder,* 408 Pa. 253, 257, 182 A.2d 495, 496 (1962), but the more inflammatory the photograph, the greater the need to establish the evidentiary value. [*Scaramuzzino*] *supra,* 455 Pa. at 381, 317 A.2d at 226." *Commonwealth of Pennsylvania v. Smith,* 313 Pa. Super. 138, 149-150, 459 A.2d 777, 783 (1983). See also, *Commonwealth of Pennsylvania v. Groff, supra.*

In weighing the inflammatory nature of the evidence against its probative value, the trial court found the evidence more probative than prejudicial. We do not

find this to be an erroneous determination. As stated in *Commonwealth v. Clark,* 280 Pa. Super. 1, 421 A.2d 374 (1980), "[i]n determining whether evidence is so remote that the prejudicial effect outweighs the probative value, the court has no fixed standard on which to rely, but must instead consider the nature of the crime, the evidence being offered, and all attendant circumstances." *Id.* at 7, 421 A.2d at 376, citing *Commonwealth v. Kinnard,* 230 Pa. Super. 134, 326 A.2d 541 (1974).

The admissibility of this photograph depends on the elements of the case being contested. See *Commonwealth of Pennsylvania v. Edwards,* 521 Pa. 134, 555 A.2d 818 (1989). The defendant is being brought to trial on charges of criminal homicide and murder and is asserting a mental infirmity defense and battered wife syndrome defense. The Commonwealth is seeking to prove by the admission of the picture through the testimony of the daughters that the victim was afraid of the defendant. The photograph tends to establish a fact in issue—whether there was continuing abuse in the home and further, who was being abused. Therefore, we find that the evidence is relevant and probative and we will allow its admission.

### III. DEFENDANT'S ATTEMPT AND/OR THREAT TO COMMIT SUICIDE [7]

The Commonwealth seeks to have admitted certain threats and/or attempts made by the defendant to commit

---

7. There are many situations in which a party may offer evidence of the opposing party's conduct as circumstantial evidence that the opposing party was conscious of his guilt or the weakness of his case. This evidence is generally admissible. It is treated as an admission by conduct. Included within this category are flight, concealment,

suicide after the offense had been committed, based upon the theory enunciated by the Superior Court in *Commonwealth of Pennsylvania v. Sanchez,* 416 Pa. Super. 1, 610 A.2d 1020 (1992), *alloc. denied,* 533 Pa. 624, 620 A.2d 490 (1993).[8]

In *Sanchez,* the defendant was found guilty by jury of second degree murder, rape, robbery and burglary. On direct appeal, the defendant alleged numerous trial errors, the most significant being his contention that it was prejudicial error to allow the jury to hear evidence of a post-arrest, suicidal ideation. During cross-examination at trial, appellant was asked whether he had voluntarily signed himself into the psychiatric unit upon his arrival at prison. The defendant conceded that he had been in the psychiatric unit for about a month but denied that he had voluntarily signed himself into the unit and said that he had been admitted for tests. He also denied that he had told anyone that he wanted to kill himself or that he had been thinking of killing himself. The psychiatric records of the prison's health care system and mental health care services program reflected that the defendant has signed a voluntary commitment form under section 201 of the Mental Health Procedures Act, and that, upon his admission into the

and other attempts to avoid apprehension or identification; false statements or testimony; killing, intimidating, or attempting to influence witnesses or jurors; destruction of evidence; and attempted suicide. Penn. Evid. (P. & P.) §423, pages 276 and 277.

8. The assistant district attorney stated at the pre-trial conference that "She made the threat—I don't know whether she had attempted or not. I believe she had taken some drugs, stored up some drugs— to the EMT person when she responded to have her involuntarily committed, she said she wished to change her plea in the case." (Transcript, page 7.)

psychiatric unit, suicide precautions had been taken involving close monitoring by medical personnel.

"In general, '[e]vidence that the accused attempted to commit suicide is relevant as a circumstance tending in some degree to show consciousness of guilt.' 1 Wharton's Criminal Evidence, §159, at p. 649 (14th ed. 1985). It is admissible on the theory that '[a]n *attempt at suicide* may be construed as an attempt to flee and escape forever from the temporal consequences of one's misdeed.' 2 Wigmore, Evidence §276(f), at p. 131 (Chadbourn rev. 1979). As a general rule, therefore, '[t]he fact that one charged with a crime attempts to commit suicide soon after the offense occurs, or in order to escape prosecution for committing such crime, is admissible in evidence. The principle upon which evidence of flight of one accused of a crime is admitted is applicable to evidence that the accused, when in custody, charged with crime, attempted to take his own life and thereby escape further prosecution. Attempted suicide, as does flight, tends to show a consciousness of guilt.' 29 Am.Jur.2d, Evidence, §284. (footnotes omitted) See also, Annot., Admissibility of Evidence Relating To Accused's Attempt to Commit Suicide, 22 A.L.R.3d 840 (1968)." *Sanchez, supra* at 172-173, 610 A.2d at 1026. (emphasis in original)

In *Commonwealth of Pennsylvania v. Giacobbe,* 341 Pa. 187, 193, 19 A.2d 71, 74 (1941), the Supreme Court of Pennsylvania held that a jury had properly been allowed to consider two suicide *attempts* by the defendant following police interrogation because such attempts tended to establish consciousness of guilt. In *Commonwealth of Pennsylvania v. Homeyer,* 373 Pa. 150, 94 A.2d 743 (1953), the Supreme Court further

stated that not only is an attempted suicide by a defendant admissible to show consciousness of guilt, but also a defendant's conduct evidencing fear or mental distress.

The defendant in *Sanchez, supra* at 173-74, 610 A.2d at 1027, did not attempt to distinguish evidence of suicide ideation from evidence of an actual attempt to commit suicide, but argued that the mere mention of suicide is so prejudicial as to deprive the defendant of a fair trial, citing to *Seals Incorporated v. Tioga County Grange Mutual Insurance Company,* 359 Pa. Super. 606, 519 A.2d 951 (1986), *appeal dismissed,* 518 Pa. 75, 541 A.2d 314 (1988). The Superior Court, in its analysis, found *Seals* to be unpersuasive because there was ample evidence from which a jury could infer a connection between appellant's thoughts of suicide and the crimes with which he had been charged. The Superior Court in *Sanchez* held:

"After careful consideration, there appears to us to be no sound basis for excluding evidence of a defendant's post-arrest, suicide ideation. Evidence of actual attempts to commit suicide are uniformly admitted as evidence tending to show consciousness of guilt on the part of the defendant, and a similar inference can be drawn from a threat to commit suicide. In reaching this conclusion, we are guided by our Supreme Court's pronouncement that not only attempts to commit suicide, but also manifestations of mental distress tend to demonstrate a defendant's consciousness of guilt. See *Commonwealth v. Homeyer, supra; Commonwealth v. Giacobbe, supra.* Certainly, by expressing a desire to kill himself, a defendant manifests emotional distress as an aftermath of being arrested and subjected to pre-trial incarceration. We hold, therefore, that a jury can reasonably infer consciousness of guilt from the fact that an accused has made one or more threats to commit

suicide or has expressed suicidal thoughts." *Id.* at 176, 610 A.2d at 1028.

The instant matter we find to be factually distinguishable from *Sanchez*. Here, the threat was made to an EMT person when this individual responded to have the defendant involuntarily committed following the homicide. The defendant in the instant case has, pursuant to the notice of mental infirmity defense (see footnote 3), a history dating back to 1966 of suicidal ideation and other mental and psychological problems. In *Sanchez,* there is no history of suicidal ideation until the defendant is arrested and upon his arrival at the prison. We find this to be an important distinction between the instant matter and *Sanchez* and we, therefore do not allow the admission of the threat or attempt to commit suicide by the defendant to EMT personnel.

Accordingly, we enter the following order.

## ORDER

And now, to wit, August 29, 1994, upon consideration of the motion in limine of the defendant, Frances Theresa Derby, it is hereby ordered and decreed that:

(1) The motion in limine is denied as to the admission of statements allegedly made by the defendant that she wished that the victim were dead.

(2) The motion in limine is denied as to the admission of a photograph of a doorstopper used by the victim.

(3) The motion in limine is granted as to the admission of the defendant's attempt and/or threat to commit suicide made to an EMT.

The clerk of courts shall provide notice of the entry of this opinion and order as required by law.